# In the United States District Court
## for the Eastern District of Wisconsin
### Milwaukee Division

**Wisconsin Right to Life Committee, Inc.,** and Wisconsin Right to Life State Political Action Committee,

*Plaintiffs*

*v.*

Civil Action No. ____

**Gordon Myse,** in his official capacity as chair and member of the Wisconsin Government Accountability Board; Thomas Barland, in his official capacity as vice chair and member of the Wisconsin Government Accountability Board; Michael Brennan, Thomas Cane, David Deininger, and Gerald Nichol, in their official capacities as members of the Wisconsin Government Accountability Board; and John Chisholm, in his official capacity as Milwaukee County district attorney,

*Defendants*

## Verified Complaint

1

# Table of Contents

Table of Contents ............................................................ 2

I.  Background ................................................................. 6

    A.  Plaintiffs ............................................................ 6

        1.  WRTL .......................................................... 6
        2.  WRTL Speech ................................................ 6
        3.  What WRTL Does and Does Not Do ...................... 7
        4.  WRTL-SPAC ................................................. 9

    B.  Defendants ......................................................... 12
    C.  Wisconsin Law ..................................................... 12

        1.  Regulation of WRTL as a Committee/Political Committee,
            Person other than a Political Committee, or Organization ....... 14
        2.  24 Hour Reporting ......................................... 23
        3.  Oath for Independent Disbursements ...................... 25
        4.  Political Committee Reporting Thresholds ............... 26
        5.  Contribution Limit ........................................ 27
        6.  Solicitations for an Entity's Separate Segregated Fund ........... 28
        7.  Attribution and Disclaimer Requirements ................ 29

    D.  Future Speech ..................................................... 29

II. Discussion ................................................................ 30

    A.  Justiciability ..................................................... 31

        1.  Standing ..................................................... 31

            a.  Constitutional Standing ............................. 31
            b.  Prudential Standing .................................. 31

        2.  Ripeness ..................................................... 32

    B.  Irreparable Harm .................................................. 33

    C.  First Principles .................................................. 33

        1.  The Limited Power of Government .......................... 33

2

2.      The First and Fourteenth Amendments as a
        Restriction on the Already Limited Power of Government........ 33

        a.      Vagueness               ........................................................... 34
        b.      Overbreadth             ........................................................... 34

3.      Determining the Meaning of Political Speech and
        whether Government may Regulate it ....................................... 35

D.      Vagueness                       ........................................................... 36

        1.      The Order of Questions for Political Committee Status ........... 36
        2.      Wisconsin Law is Vague, and therefore Overbroad .................. 36
        3.      Why Wisconsin Law is Vague, and therefore Overbroad ......... 37

E.      Overbreadth:  In General        ........................................................... 38

F.      Overbreadth:  The Committee/Political Committee,
        "Persons other than Political Committees," and
        Organization Definitions        ........................................................... 38

        1.      Strict Scrutiny         ........................................................... 38
        2.      Applying Strict Scrutiny ....................................................... 40

G.      Overbreadth:  The Section 1.28 and Section 1.91
        Requirements                    ........................................................... 41

        1.      Exacting Scrutiny       ........................................................... 42
        2.      Spending for Political Speech ................................................ 43
        3.      Government's Interest in Disclosure ...................................... 43
        4.      Applying Exacting Scrutiny ................................................... 43

H.      Overbreadth:  24 Hour Reporting ...................................................... 44
I.      Overbreadth:  Oath for Independent Disbursements .......................... 45
J.      Overbreadth:  Political Committee Reporting Thresholds ................... 46

K.      Overbreadth:  The Political Committee Contribution Limit
        and Solicitations for an Entity's Separate Segregated Fund .............. 46

        1.      Strict Scrutiny for Contribution Limit ...................................... 46
        2.      Intermediate Scrutiny for Contribution Limit ........................... 47
        3.      Scrutiny for Limit on Solicitations for an Entity's
                Separate Segregated Fund ....................................................... 48

3

L.     Overbreadth:  Attribution and Disclaimer Requirements................... 48
M.     Facially Unconstitutional          ........................................... 49
N.     Narrowing Glosses, Certification, and Severability ........................... 50

III.   Prayers for Relief                 ........................................... 50

4

1.      Plaintiffs Wisconsin Right to Life, Inc. ("WRTL"), and Wisconsin Right to Life State Political Action Committee ("WRTL-SPAC") file this verified complaint.

2.      This action begins with the principle of freedom of speech. Government may limit or otherwise regulate speech only when it has the enumerated power to do so and only when the exercise of that power is constitutional.

3.      This Court has jurisdiction, because this action arises under the First and Fourteenth Amendments to the United States Constitution.  *See* 28 U.S.C. § 1331 (1980).

4.      This Court also has jurisdiction, because this action arises under Section 1 of the Civil Rights Act of 1871, 42 U.S.C. § 1983 (1996).  *See* 28 U.S.C. § 1343.a (1979).

5.      This Court also has jurisdiction under the Declaratory Judgment Act. *See id.* §§ 2201 (1993), 2202 (1948).

6.      Venue is proper in this Court, because all Defendants, in their official capacities, reside in Wisconsin, and Defendant John Chisholm, in his official capacity as Milwaukee County district attorney, resides in the Eastern District of Wisconsin.  *See id.* § 1391.b.1 (1992).  Venue is also proper in this Court, because Plaintiff WRTL is incorporated in Wisconsin, Plaintiff WRTL has its principal place of business in the Eastern District of Wisconsin, and Plaintiff WRTL-SPAC has its principal place of business in the Eastern District of Wisconsin, so "a substantial

5

part of the events or omissions giving rise to the claim[s]" occurs in the Eastern District of Wisconsin. *See id.* § 1391.b.2.

## I. Background

### A. Plaintiffs

#### 1. WRTL

7.     Plaintiff WRTL, a non-profit corporation exempt from federal income taxation under I.R.C. § 501.c.4 (2006), is a non-sectarian and non-partisan entity.[1] It is not connected with any political candidate or political party.   Nor is it connected with any political committee other than its own.  *Cf.* 2 U.S.C. § 431.7 (2002) (defining "connected organization" under federal law).

8.     WRTL's mission is to "make euthanasia, infanticide, abortion and destruction of human embryos socially, ethically and legally unacceptable solutions to human problems and to promote positive alternatives to each of these acts."[2]   In pursuit of that mission, WRTL engages in political speech.

#### 2. WRTL Speech

9.     Among speech WRTL seeks to do in 2010 is a radio ad,[3] telephone calls,[4] a flier,[5] and a WRTL website page.[6]   Each contains express advocacy as

---

[1] Plaintiffs do not say "organization" here, because that is a term of art in law WRTL challenges.  *See* GAB § 1.91.1.f (2010).

[2] VERIFIED COMPL. ("VC") Exh. 1, *available at* http://www.wrtl.org/partnerwithus/missionvision.aspx  (all Internet sites visited Aug. 2, 2010).

[3] VC Exh. 2.

6

defined in *Buckley v. Valeo*, 424 U.S. 1, 44 & n.52, 80 (1976), *vis-à-vis* state or local office in Wisconsin.[7]  Except for the flier, each indicates when WRTL wants to do the speech.  WRTL seeks to circulate the flier between now and the 2010 general election.

10.    The speech WRTL seeks to do in 2010 also includes a *Life Voice* story and an issue-advocacy flier in the 30 days before the Wisconsin primary or 60 days before the general election.[8]  *Life Voice* is WRTL's newsletter.  WRTL will circulate its issue-advocacy flier separately from its express-advocacy flier.

### 3.    What WRTL Does and Does Not Do

11.    To pay for its speech, WRTL receives more than $25 in donations in each calendar year and spends more than $25 – and even more than $1000 – in each calendar year.  *Cf.* WIS. STAT. § 11.05.1, 2r (2005);[9] GAB § 1.28.2 (2010) ("the applicable requirements of ch. 11., Stats.");[10] GAB § 1.91.3 (2010).[11]

---

[4] VC Exh. 3.

[5] VC Exh. 4.

[6] VC Exh. 5.

[7] The 2010 Wisconsin primary is on September 14, and the general election is on November 2.  OFFICES TO BE ELECTED IN 2010, *available at* http://gab.wi.gov/elections-voting/offices.

[8] VC Exhs. 6-7.

[9] *Available at* http://www.legis.state.wi.us/statutes/Stat0011.pdf.

[10] VC Exh. 8, *available at*

7

12. WRTL does not, however, make direct contributions to Wisconsin political committees, *cf. Buckley,* 424 U.S. at 24 n.23, or coordinate any of the speech at issue here with any candidate for state or local office in Wisconsin, the candidate's agents, or the candidate's committee, *cf. id.* at 78, *quoted in FEC v. Survival Educ. Fund, Inc.,* 65 F.3d 285, 294 (2d Cir. 1995), or a state or local political party in Wisconsin. *Cf. FEC v. McConnell,* 540 U.S. 93, 219-23 (2003), *overruled on other grounds, Citizens United v. FEC,* 558 U.S. ___, ___, 130 S.Ct. 876, 896-914 (2010).[12]

13. Nor is there at issue here a contribution WRTL receives that (1) is earmarked for a Wisconsin political committee, *i.e.,* an *indirect* contribution to a Wisconsin political committee, *cf. Buckley,* 424 U.S. at 24 n.23, 78, or (2) "will be converted to an expenditure[,]" *Survival Educ. Fund,* 65 F.3d at 295, *i.e.,* is earmarked for express advocacy as defined in *Buckley,* 424 U.S. at 44 n.52, 80, *vis-à-vis* state or local office in Wisconsin.[13]

---

https://health.wisconsin.gov/admrules/public/RetrieveRmoDocument?nDocumentId=20255.

[11] VC Exh. 9, *available at* https://health.wisconsin.gov/admrules/public/RetrieveRmoDocument?nDocumentId=17056.

[12] Although it is not material, WRTL does not make direct contributions to *any* political committee or coordinate the speech at issue here with *any* candidate, the candidate's agents, or the candidate's committee, or with *any* political party.

[13] Although it is not material, there is not at issue here a contribution WRTL receives that (1) is earmarked for *any* political committee, *i.e.,* an *indirect*

8

### 4.    WRTL-SPAC

14.    Plaintiff WRTL-SPAC is a Wisconsin political committee connected with WRTL.  As such, it is a legal person distinct from WRTL.  *See Citizens United,* 130 S.Ct. at 897 ("a separate association from the corporation" (citing *McConnell,* 540 U.S. at 330-33 (opinion of Kennedy, J.))); *California Med. Ass'n v. FEC,* 453 U.S. 182, 196 (1981) ("a separate legal entity").  It is not under the control of a candidate or candidates for state or local office in Wisconsin, yet it spends the majority of its money on independent expenditures for such candidates.  As a Wisconsin political committee, WRTL-SPAC does speech and complies with the law that applies to it, including 24 hour reporting requirements,[14] the oath-for-independent-disbursements requirements,[15] and the applicable political-committee reporting thresholds.[16]  It does not receive contributions beyond Wisconsin limits.[17]  Nor does WRTL spend more than $500 in a calendar year to solicit contributions for WRTL-SPAC.[18]

---

contribution to *any* political committee or (2) "will be converted to an expenditure[,]" *i.e.,* is earmarked for express advocacy as defined in *Buckley, vis-à-vis any* office.

[14] *Cf. infra* Part I.C.2.

[15] *Cf. infra* Part I.C.3.

[16] *Cf. infra* Part I.C.4.

[17] *Cf. infra* Part I.C.5.

[18] *Cf. infra* Part I.C.6.

15.     WRTL-SPAC also does not contribute to candidates for state or local office in Wisconsin.[19]  It did many years ago, yet on June 15, 2010, its board adopted a policy not to do so any longer.  It does only independent expenditures, and only for state or local candidates in Wisconsin.  The policy statement reads as follows:  "The Wisconsin Right to Life State Political Action Committee will operate as a committee which only makes independent expenditures and does not contribute directly or indirectly to a candidate's campaign."

16.     WRTL-SPAC wants to run two 30 second radio ads in 2010.[20]  WRTL-SPAC would comply with the statutory attribution and disclaimer requirement, *see* WIS. STAT. § 11.30.2.b, d (2009) ("'Paid for by' followed by the name of the committee … and the name of the treasurer or other authorized agent"; "Not authorized by any candidate or candidate's agent or committee"),[21] yet adding the regulatory attribution and disclaimer, GAB § 1.42.5 (1994),[22] to these 30 second ads takes up most of the 30 seconds and distracts the listeners from WRTL-SPAC's message.[23] The Section 1.42.5 attribution and disclaimer applies to committees and individuals and is:  "The committee (individual) is the sole source of this communication and

---

[19] Although it is not material, WRTL-SPAC does not contribute to *any* candidates.

[20] Exhs. 10-11.

[21] *See* Exhs. 10-11.

[22] *Cf. infra* Part I.C.7.

[23] *See* Exhs. 12-13.

Case 2:10-cv-00669-CNC   Filed 08/05/10   Page 10 of 60   Document 1

the committee (individual) did not act in cooperation or consultation with, and in concert with, or at the request or suggestion of any candidate or any agent or authorized committee of a candidate who is supported or opposed by this communication." *Id.*

17.     Furthermore:

• WRTL-SPAC regularly receives contributions exceeding $20 and $100, receives other income exceeding $20, makes disbursements exceeding $20, and has obligations exceeding $20. WRTL-SPAC expects to do so in 2010.[24]

• In 2006 and 2008, WRTL-SPAC received $500 contributions in the 15 days before an election.[25] Jim Dragani plans to make a $500 contribution in the 15 days before either the primary or general election in 2010.[26]

• WRTL-SPAC has previously spent more than $20 on independent expenditures in the 15 days before a primary or general election and intends to do so in 2010.[27]

• Terry and Mary Kohler each wish to contribute $5000 to WRTL-SPAC in 2010. However, given other contributions they plan to make in 2010, their

---

[24] *E.g.,* VC Exhs. 14-22; *cf. infra* Part I.C.2.

[25] VC Exh. 17 at .pdf page 3; VC Exh. 20 at .pdf page 5.

[26] *Cf. infra* Part I.C.2.

[27] *E.g.,* VC Exh. 16 at .pdf pages 11-12; VC Exh. 17 at .pdf pages 5-7; VC Exh. 20 at .pdf pages 35-39, 42; *cf. infra* Part I.C.2.

Case 2:10-cv-00669-CNC   Filed 08/05/10   Page 11 of 60   Document 1

contributions to WRTL-SPAC would violate Wisconsin's $10,000 aggregate contribution limit.[28]

● WRTL wishes to spend more than $500 annually, including in 2010, to solicit contributions for WRTL-SPAC, yet this would violate Wisconsin law.[29]

## B. Defendants

18. Defendants Gordon Myse and Thomas Barland are the chair and vice chair, respectively, of the Wisconsin Government Accountability Board ("GAB"). They are also GAB members, as are Defendants Michael Brennan, Thomas Cane, David Deininger, and Gerald Nichol.[30] Wisconsin law vests Defendants, all of whom are sued in their official capacities, with authority *vis-à-vis* the law at issue in this action. They act under color of law. *See, e.g.,* Wis. Stat. §§ 11.21 (2007), 11.22 (2007), 11.38.4 (2007), 11.60 (2009), 11.61 (2009). Defendant John Chisholm is Milwaukee County district attorney and has independent enforcement authority. He also acts under color of law. *See id.* § 11.60.4.

## C. Wisconsin Law

19. WRTL and WRTL-SPAC reasonably believe that if they do not follow Wisconsin law, Defendants will subject them to enforcement and prosecution leading to civil liabilities and criminal penalties. *See id.* §§ 11.21, 11.22, 11.38.4,

---

[28] *Cf. infra* Part I.C.5.

[29] *Cf. infra* Part I.C.7.

[30] MEMBERS OF THE GOVERNMENT ACCOUNTABILITY BOARD, *available at* http://gab.wi.gov/about/members.

11.60, 11.61, 11.60.4. Even if there were no civil liabilities or criminal penalties, being cleared provides little comfort to those whom government has wrung through a process that becomes the punishment. *See, e.g., FEC v. Wisconsin Right to Life, Inc.,* 551 U.S. 449, 468 n.5 (2007) ("*WRTL II*"). "The right of free speech can be trampled or chilled even if convictions are never obtained" and civil liabilities are never imposed. *FEC v. Hall-Tyner Election Campaign Comm.,* 678 F.2d 416, 422 n.15 (2d Cir. 1982), *cert. denied,* 459 U.S. 1145 (1983).

20. In four instances,[31] Wisconsin law chills[32] WRTL and WRTL-SPAC from proceeding with their speech. They will do their speech only if the Court grants the requested relief. Consistent with this, Terry and Mary Kohler will each make their $5000 contributions in 2010 only if WRTL-SPAC receives the relief it requests *vis-à-vis* the aggregate contribution limit.[33]

---

[31] *Infra* Parts I.C.1 (WRTL *vis-à-vis* Section 11.01.4 and Section 1.28); *infra* Part I.C.6 (WRTL); *infra* Parts I.C.5, 6, 7 (WRTL-SPAC).

[32] The term "pre-enforcement" applies before civil enforcement or criminal prosecution. The term "chill" is a proper subset of "pre-enforcement" and applies in the First Amendment context when speakers, fearing civil enforcement or criminal prosecution, will not engage in their speech. *See, e.g., New Hampshire Right to Life PAC v. Gardner,* 99 F.3d 8, 13-14 (1st Cir. 1996) ("*NHRL*"). Thus, "pre-enforcement" applies to all of Plaintiffs' speech, while "chill" applies to some of the speech.

[33] *Cf. infra* Part I.C.5.

21.    In four instances,[34] there is no chill.  WRTL and WRTL-SPAC will do their speech and comply with the law while asking the Court to declare the law unconstitutional and enjoin its enforcement so compliance is no longer necessary. Consistent with this, Jim Dragani will make his $500 contribution in the 15 days before either the primary or general election in 2010.[35]

### 1.    Regulation of WRTL as a Committee/Political Committee, Person other than a Political Committee, or Organization

22.    First, with exceptions that do not apply here, Wisconsin law defines a "[c]ommittee or political committee" as:

> any person other than an individual and any combination of 2 or more persons, permanent or temporary, which makes or accepts *contributions* or makes *disbursements,* whether or not engaged in activities which are exclusively political, except that a "committee" does not include a political "group" under this chapter.

WIS. STAT. § 11.01.4 (2007) (emphasis added).[36]  With exceptions that do not apply here, disbursement includes:

> A purchase, payment, distribution, loan, advance, deposit, or gift of money or anything of value, except a loan of money by a commercial

---

[34] *Infra* Part I.C.1 (WRTL *vis-à-vis* Section 1.91); *infra* Part I.C.2, 3, 4 (WRTL-SPAC).

[35] *Cf. infra* Part I.C.2.

[36]

> "Group" or "political group" means any person other than an individual and any combination of 2 or more persons, permanent or temporary, which makes or accepts contributions or makes disbursements for the purpose of influencing the outcome of any referendum whether or not engaged in activities which are exclusively political.

WIS. STAT. § 11.01.10.

14

> lending institution made by the institution in accordance with applicable laws and regulations in the ordinary course of business, made *for political purposes*. In this subdivision, "anything of value" means a thing of merchantable value.

*Id.* § 11.01.7.a.1 (emphasis added). With exceptions that do not apply here, "contribution" similarly includes:

> A gift, subscription, loan, advance, or deposit of money or anything of value, except a loan of money by a commercial lending institution made by the institution in accordance with applicable laws and regulations in the ordinary course of business, made *for political purposes*. In this subdivision "anything of value" means a thing of merchantable value.

*Id.* § 11.01.6.a.1 (emphasis added).

> An act is for "political purposes" when it is done *for the purpose of influencing the election or nomination for election* of any individual to state or local office, for the purpose of influencing the recall from or retention in office of an individual holding a state or local office, for the purpose of payment of expenses incurred as a result of a recount at an election, or for the purpose of influencing a particular vote at a referendum. In the case of a candidate, or a committee or group which is organized *primarily for the purpose of influencing the election or nomination for election* of any individual to state or local office, for the purpose of influencing the recall from or retention in office of an individual holding a state or local office, or for the purpose of influencing a particular vote at a referendum, all administrative and overhead expenses for the maintenance of an office or staff which are used principally for any such purpose are deemed to be for a political purpose.
>
> (a) Acts which are for "political purposes" include but are not limited to:
>
>> 1. The making of a communication which expressly advocates the election, defeat, recall or retention of a clearly identified candidate or a particular vote at a referendum.
>>
>> 2. The conduct of or attempting to influence an

15

> endorsement or nomination to be made at a convention of political party members or supporters concerning, in whole or in part, any campaign for state or local office.

*Id.* § 11.01.16 (emphasis added).

23. The GAB has limited Section 11.01.16. Under the newly amended Section 1.28, "the applicable requirements of ch. 11., Stats.," GAB § 1.28.2, apply when speakers:

- "Make … *disbursements* for *political purposes," id.* § 1.28.2.a (emphasis added); *see id.* § 1.28.4, or

- "Make a communication for a political purpose[,]" *id.* § 1.28.2.c; *see id.* § 1.28.4, with the understanding that a "communication is for a 'political purpose[,]'" *id.* § 1.28.3,[37] regardless of the medium in which it occurs, *see id.* § 1.28.1.b (listing specific media and adding "any other form of communication that may be utilized for a political purpose"),

    if either of the following applies:

    (a) The communication contains terms such as the following *or their functional equivalents* with reference to a clearly identified candidate that unambiguously relates to the campaign of that candidate:

    1. "Vote for;"
    2. "Elect;"
    3. "Support;"
    4. "Cast your ballot for;"
    5. "Smith for Assembly;"
    6. "Vote against;"
    7. "Defeat;" or
    8. "Reject."

---

[37] Section 1.28.2.a refers to "disbursements for political purposes" while Section 1.28.2.c refers to "a communication for a political purpose." Section 1.28.3 limits the latter yet not the former.

> (b) The communication … is made during the period beginning on the 60th day preceding a general, special, or spring election and ending on the date of that election or during the period beginning on the 30th day preceding a primary election and ending on the date of that election and that includes a reference to or depiction of a clearly identified candidate and:
>
>> 1. Refers to the personal qualities, character, or fitness of that candidate;
>> 2. *Supports or condemns* that candidate's position or stance on issues; or
>> 3. *Supports or condemns* that candidate's public record.

GAB § 1.28.3 (emphasis added).[38]

Having made such "disbursements" under Section 1.28.2.a or such "a communication for a political purpose" under Section 1.28.2.c, *see id.* § 1.28.4, speakers must also comply with "the applicable requirements of ch. 11., Stats.," *id.* § 1.28.2, when they:

- "Make contributions … for political purposes," *id.* § 1.28.2.a, *i.e.,* make contributions to (1) a candidate, (2) a political committee, or (3) "an individual who makes contributions to a candidate or political committee or incurs obligations or makes disbursements for *political purposes.*" *Id.* § 1.28.1.b (emphasis added), or

---

[38] Section 1.28.3.a *without* the phrase "or their functional equivalents" means express advocacy as defined in *Buckley,* 424 U.S. at 44 & n.52, 80, *vis-à-vis* state or local office in Wisconsin, *see* WIS. STAT. § 11.01.1 (defining "candidate"), which by definition is unambiguously campaign related in Wisconsin. *See Buckley,* 424 U.S. at 80-81; *infra* Part II.G.2. Whatever the phrase "or their functional equivalents" may have meant in the previous version of this regulation, GAB § 1.28.c (2001) (VC Exh. 23), the phrase has since become a term of art, *see McConnell v. FEC,* 540 U.S. 93, 206 (2003), that means the appeal-to-vote test. *See FEC v. Wisconsin Right to Life, Inc.,* 551 U.S. 449, 457, 469-70, 474 n.7 (2007) ("*WRTL II*").

17

- "Make contributions to any person at the request of with the authorization of a candidate or political committee[.]" *Id.* § 1.28.2.b.

24.    Which speakers Section 1.28 applies to is another matter.  Section 1.28 applies to "[i]ndividuals other than candidates[.]"  *Id.* § 1.28.2.a.  Section 1.28 also applies to "persons *other than* political committees[,]" *id.* (emphasis added), *i.e.,* "persons other than" committees[39] that are (1) "under the control of a candidate" or (2) "formed *primarily* to *influence elections*[.]"  *Id.* § 1.28.1.a (emphasis added).  However, Wisconsin law does not define "formed primarily to influence elections."[40]  *See generally Wisconsin Right to Life, Inc. v. Paradise,* 138 F.3d 1183, 1185 (7th Cir. 1998) (appearing to bring "groups,"[41] including WRTL, under former Section 1.28); *Elections Bd. v. Wisconsin Mfrs. & Commerce,* 597 N.W.2d 721, 727 & n.10, 731, 736 (Wis.), *cert. denied,* 528 U.S. 969 (1999).[42]

---

[39] Under Wisconsin campaign-finance law generally, "committee" and "political committee" are synonyms, *see* WIS. STAT. § 11.01.4, but under this regulation "political committee" is a proper subset of "committee."  *See* GAB § 1.28.1.a ("'Political committee' means every committee which ...").

[40] *See generally* VC Exh. 8 at 2 (Order of the GAB, CR 09-013 at 1) (recalling the application of former Section 1.28 to "individuals and organizations"), *available at* http://elections.state.wi.us/docview.asp?docid=19255&locid=47.

[41] This is different from how Wisconsin law defines "group."  *See supra* Part I.C.1 (citing WIS. STAT. § 11.01.10).

[42] Until the GAB amended Section 1.28 in 2010, this law or Wisconsin law in general, *see Wisconsin Mfrs.,* 597 N.W.2d at 727 & n.10, reached only express advocacy as defined in *Buckley,* 424 U.S. at 44 & n.52, 80.  *Wisconsin Mfrs.,* 597 N.W.2d at 731; *see also* WIS. STAT. § 11.06.2 ("if a disbursement is made or obligation incurred by an individual other than a candidate or by a committee or group which is not primarily organized for political purposes, and the disbursement does not constitute a contribution to any candidate or other individual, committee or

18

25.     WRTL is not under the control of a candidate or candidates for state or local office in Wisconsin.[43]  In addition, WRTL's organizational documents – *i.e.,* its articles of incorporation[44] and by-laws[45] – and public statements[46] do not indicate it has the major purpose of nominating or electing a candidate or candidates for state or local office in Wisconsin, and WRTL does not spend the majority of its money on contributions to, or independent expenditures for, a candidate or candidates for state or local office in Wisconsin.[47]  "Independent expenditure" means express advocacy as defined in *Buckley* and not coordinated with a candidate, a candidate's committee, a candidate's agent, or a party, which is the standard under the Constitution.  424 U.S. at 39-51; *McConnell,* 540 U.S. at 219-23; *cf.* 2 U.S.C.

---

group, the disbursement or obligation is required to be reported only if the purpose is to expressly advocate the election or defeat of a clearly identified candidate or the adoption or rejection of a referendum").  The Wisconsin Supreme Court left it to the Wisconsin Legislature or the GAB to decide whether to amend Wisconsin law.  *See Wisconsin Mfrs.,* 597 N.W.2d at 736 (referring to the Elections Board, the GAB's predecessor).

[43] Although it is not material, WRTL is not under the control of *any* candidate or candidates.

[44] VC Exh. 24.

[45] VC Exh. 25.

[46] *E.g.,* VC Exh. 1.

[47] *See* VC Exh. 26 (IRS Form 990).

19

§ 431.17 (2002) (following *Buckley* by limiting the statutory independent-expenditure definition to express advocacy).[48]

26.     Nevertheless, WRTL reasonably fears that, based on its speech, WRTL "makes or accepts contributions, incurs obligations or makes disbursements in a calendar year in an aggregate amount in excess of $25" and is a committee/political committee under the Wisconsin statute.  *See* WIS. STAT. § 11.01.4.  WRTL also reasonably fears that, based on its speech, WRTL is a "person[] other than [a] political committee[]" under a Wisconsin regulation.  GAB §§ 1.28.1.a, 1.28.2.[49]

27.     Under either Section 11.01.4 or Section 1.28, WRTL will have to comply with a panoply of burdens that Wisconsin *via* Section 11.01.4 or *via* Section 1.28, *see id.* § 1.28.2 ("the applicable requirements of ch. 11., Stats."), imposes on entities such as WRTL, including:

- Registration (including treasurer-designation and bank-account) and termination requirements.  *E.g.,* WIS. STAT. §§ 11.05 (registration), 11.055 (1997) (filing fee), 11.10.3 (2005) (treasurer), 11.12.1 (2009) (same), 11.14 (2005) (bank account), 11.16.1, 3 (2009) (treasurer and bank account), 11.19 (2005) (termination).

- Recordkeeping requirements.  *E.g., id.* § 11.12.3 (2009).

---

[48] Although it is not material, nothing in WRTL's organizational documents or in its public statements indicates that WRTL has the major purpose of nominating or electing *any* candidate or candidates, and WRTL does not spend the majority of its money on contributions to, or independent expenditures for, *any* candidate or candidates.

[49] GAB members' enacting a regulation they have "acknowledged they may not have the authority" to enact enhances this fear.  VC Exh. 27 (Mark Pitsch, *Board targets political 'issue ads,'* WISCONSIN STATE J. (Madison), Aug. 29, 2008, at B-1).

- Extensive reporting requirements. *E.g., id.* §§ 11.06 (2005), 11.12.4 (2009), 11.20 (2005).

- Limits on contributions received. *E.g., id.* §§ 11.16.2, 11.24 (2005), 11.25 (2005), 11.26.4 (2009), and

- Contribution-source bans. *E.g., id.* §§ 11.24, 11.25, 11.38.1; 2 U.S.C. §§ 441b.a, 441b.b.2 (2002) (national banks and national corporations), 441e (2002) (foreign nationals).

28. Furthermore, Wisconsin imposes full-fledged political-committee burdens – although not *all* of *its* political-committee burdens – on organizations, *i.e.,* persons *other than* individuals, committees, or groups, GAB § 1.91.1.f, that "accept[] contributions made for, incur[] obligations for, or mak[e] an independent disbursement exceeding $25 in aggregate during a calendar year," *id.* § 1.91.3, with "contribution," "independent disbursement," and "incurred obligation" having the same meaning as in the statute. *Id.* § 1.91.1.a, b, d (citations omitted). Section 1.91 requires an organization to "establish a designated depository account in the name of the organization[,]" *id.* § 1.91.3, "to receive contributions and from which to make independent disbursements." *Id.* § 1.91.h.

29. WRTL reasonably fears Section 1.91 applies to WRTL's speech, because it is an organization under Section 1.91.1.f. In the alternative, WRTL reasonably fears that once the Court holds Defendants may not regulate WRTL as a committee/political committee or as a "person other than political committee[]," Section 1.91 will apply to WRTL's speech. Then WRTL will have to comply with a panoply of burdens that Wisconsin *via* Section 1.91 imposes on organizations such as WRTL, including:

21

- Registration (including treasurer-designation and bank-account) and termination requirements. *Id.* §§ 1.91.3 (bank account, treasurer, and registration), 1.91.4, 6 (registration), 1.91.5 (filing fee), 1.91.8 (citing WIS. STAT. § 11.19 (termination)).

- Recordkeeping requirements. *Id.* § 1.91.8 (citing WIS. STAT. § 11.12 (which includes recordkeeping requirements in Section 11.12.3)), and

- Extensive reporting requirements. *Id.* (citing full-fledged political-committee reporting requirements).

30.     Whether under the statute alone or Section 1.28, the weight of the political-committee burdens[50] is such that the speech would simply not be worth it for WRTL.  It does not want to bear the burdens of being a political committee.  Nor does WRTL want to bear political-committee burdens under another label.  Nevertheless, WRTL will comply with the Section 1.91 burdens while asking the Court to declare Section 1.91 unconstitutional so compliance is no longer necessary.

31.     Therefore, Plaintiff WRTL seeks a declaratory judgment that the committee/political-committee, "persons other than political committees," and organization definitions, WIS. STAT. § 11.01.4; GAB §§ 1.28.1.a, 1.28.2 ("Individuals other than candidates and persons other than political committees"), 1.91.1.f, are unconstitutional as applied to WRTL's speech and facially.  WRTL further asks that the Court preliminarily and then later permanently enjoin their enforcement.

---

[50] VC ¶ 27.  As opposed to, for example, limited independent-expenditure reports, *see, e.g., Buckley,* 424 U.S. at 80-81; 2 U.S.C. § 434.c (2002), or limited reports for electioneering-communications as defined in the Federal Election Campaign Act ("FECA"), *see, e.g., Citizens United,* 130 S.Ct. at 914-16, 2 U.S.C. § 434.f (2002), which Wisconsin does not have.

22

32.     This will allow WRTL to do its speech, and materially similar speech in the future, without fear of WRTL's becoming a committee, a political committee, or a "person[] other than [a] political committee[]," without having to comply with the burdens Section 1.91 imposes on organizations, and without fear of enforcement or prosecution.

33.     In the alternative, *if* the Court holds that the Wisconsin statute, Section 1.28, or Section 1.91 does not unconstitutionally apply political-committee burdens to WRTL's speech, *cf. Wisconsin Right to Life,* 138 F.3d at 1185; *see generally Wisconsin Mfrs.,* 597 N.W.2d at 727 & n.10, 731, then Plaintiff WRTL seeks a declaratory judgment that Section 1.28, Section 1.91, and the burdens they impose are unconstitutional as applied to WRTL's speech and facially.  WRTL further asks that the Court preliminarily and then later permanently enjoin their enforcement.

34.     This will allow WRTL to do its speech, and materially similar speech in the future, without having to comply with these burdens, and without fear of enforcement or prosecution.

### 2.     24 Hour Reporting

35.     Second, WRTL-SPAC reasonably fears it must comply with 24 hour reporting requirements:

(5) If any contribution or contributions of $500 or more cumulatively are received by a candidate for state office or by a *committee* or individual from a single contributor later than 15 days prior to a primary or election such that it is not included in the preprimary or preelection report submitted under s. 11.20(3), the treasurer of the

23

committee or the individual receiving the contribution shall *within 24 hours* of receipt inform the appropriate filing officer of the information required under s. 11.06(1) in such manner as the board may prescribe. The information shall also be included in the treasurer's or individual's next regular report. For purposes of the reporting requirement under this subsection, only contributions received during the period beginning with the day after the last date covered on the preprimary or preelection report, and ending with the day before the primary or election need be reported.

(6) If any disbursement of *more than $20* cumulatively is made to *advocate* the election or defeat of a clearly identified candidate by an individual or *committee* later than 15 days prior to a primary or election in which the candidate's name appears on the ballot without cooperation or consultation with a candidate or agent or authorized committee of a candidate who is supported or opposed, and not in concert with or at the request or suggestion of such a candidate, agent or committee, the individual or treasurer of the committee shall, *within 24 hours* of making the disbursement, inform the appropriate filing officer of the information required under s. 11.06(1) in such manner as the board may prescribe.

WIS. STAT. § 11.12 (emphasis added). WRTL-SPAC has limited staff. Having to devote time to preparing and filing 24 hour reports is a severe burden on WRTL-SPAC's resources, including its time to devote to its mission in critical weeks of the year, especially when the disbursement disclosure threshold is $20.

36. Therefore, Plaintiff WRTL-SPAC seeks a declaratory judgment that the 24 hour reporting requirements, WIS. STAT. § 11.12.5-6, are unconstitutional as applied to WRTL-SPAC's speech and facially. WRTL-SPAC further asks that the Court preliminarily and then later permanently enjoin their enforcement.

37. This will allow WRTL-SPAC to do its speech, and materially similar speech in the future, without having to comply with the 24 hour reporting requirements, and without fear of enforcement or prosecution.

24

### 3. Oath for Independent Disbursements

38.     Third, WRTL-SPAC reasonably fears it must comply with Wisconsin law requiring the filing of an oath for independent disbursements. *See id.* § 11.06.7. Although the GAB calls this oath "voluntary," GAB 1.42.1-4, the law requires every committee to file an oath that independent disbursements are independent when the committee desires to make independent disbursements exceeding $25 in a calendar year. The committee must file the oath with its Section 11.05 registration statement before making any disbursement, refile the oath for each calendar year by January 31, WIS. STAT. § 11.06.7.a, b, and then amend "the oath whenever there is a change in the candidate or candidates to whom it applies." *Id.* § 11.06.7.b. In other words, committees must guess at the beginning of the year which candidates they will mention in independent disbursements, and then continually update their guess whenever their plans change.

39.     For WRTL-SPAC, this means filing an oath before every primary and another oath before every general election for which it plans to do independent expenditures. The one for the primary takes more time, because there are so many candidates; for some open seats, WRTL-SPAC endorses four or five candidates. Then for the general election, WRTL-SPAC removes those who lost the primary.

40.     Since committees must submit oaths before making independent disbursements, and since it is impossible for WRTL-SPAC to know in which races it will do independent expenditures, WRTL-SPAC – to be on the safe side, and to avoid civil and criminal penalties – includes all candidates it has endorsed and their

opponents just in case it does independent expenditures in races where it did not anticipate doing them. Because the list is always so long, WRTL-SPAC attaches the list giving candidates' names, their addresses, their parties, and whether the speech is "pro" or "con."[51] WRTL then has the form notarized, as the form requires.

41. With its limited resources, WRTL-SPAC does not wish to bear the burden of filing such oaths, especially before even speaking. Nor does it wish to file and continually update its oath throughout every year.

42. Therefore, Plaintiff WRTL-SPAC seeks a declaratory judgment that the oath-for-independent-disbursements requirement, WIS. STAT. § 11.06.7, is unconstitutional as applied to WRTL-SPAC's speech and facially. WRTL-SPAC further asks that the Court preliminarily and then later permanently enjoin its enforcement.

43. This will allow WRTL-SPAC to do its speech, and materially similar speech in the future, without having to comply with the oath-for-independent-disbursements requirement, and without fear of enforcement or prosecution.

### 4. Political Committee Reporting Thresholds

44. Fourth, WRTL-SPAC reasonably fears it must comply with political-committee reporting thresholds. *See id.* § 11.06.1.a, b, d, g, h. The reporting thresholds are either $20, *id.* § 11.06.1.a, d, g, h, or $100. *Id.* § 11.06.1.b. Having to:

---

[51] *E.g.,* VC Exh. 28 (oath and list before 2006 primary); VC Exhs. 29-31 (lists for 2006 general election, 2008 primary, and 2008 general election).

- Report contributors' names and addresses for all contributions exceeding $20. *Id.* § a.

- Report contributors' occupations and employers for all contributions exceeding $100 in a calendar year. *Id.* § b.

- Itemize other income exceeding $20. *Id.* § d.

- Itemize disbursements exceeding $20 with the names and addresses of persons receiving disbursements, plus the date and purpose of the disbursements. *Id.* § g, and

- Itemize obligations exceeding $20 and give the names and addresses of persons or business where WRTL-SPAC incurred the obligations, plus the date and purpose of the obligations, *id.* § h,

is a severe burden, especially on a small organization such as WRTL-SPAC. With its limited resources, WRTL-SPAC does not wish to bear the burden of reporting *all* items exceeding these thresholds.

45. Therefore, Plaintiff WRTL-SPAC seeks a declaratory judgment that the political-committee reporting thresholds, Wis. Stat. § 11.06.1.a, b, d, g, h, are unconstitutional as applied to WRTL-SPAC's speech and facially. WRTL-SPAC further asks that the Court preliminarily and then later permanently enjoin their enforcement.

46. This will allow WRTL-SPAC to do its speech, and materially similar speech in the future, without complying with the political-committee reporting thresholds.

### 5. Contribution Limit

47. Fifth, WRTL-SPAC reasonably fears it must comply with the limit on contributions it receives. The limit is an aggregate limit:

27

No individual may make any contribution or contributions to all candidates for state and local offices and to any individuals who or committees which are subject to a registration requirement under s. 11.05, including legislative campaign committees and committees of a political party, to the extent of more than a total of $10,000 in any calendar year.

*Id.* § 11.26.4; *see id.* §§ 11.16.2, 11.24, 11.25. WRTL-SPAC is a political committee that does only independent expenditures and does not wish to comply with the limit.

48. Therefore, Plaintiff WRTL-SPAC seeks a declaratory judgment that the limit on contributions it receives, WIS. STAT. §§ 11.26.4, 11.16.2, 11.24, 11.25, is unconstitutional *as applied* to its speech. WRTL-SPAC further asks that the Court preliminarily and then later permanently enjoin its enforcement.

49. This will allow WRTL-SPAC to do its speech, and materially similar speech in the future, without needing to abide by the contribution limit, and without fear of enforcement or prosecution.

**6. Solicitations for an Entity's Separate Segregated Fund**

50. Sixth, WRTL and WRTL-SPAC reasonably fear they must comply with the $500 annual limit on what WRTL spends to solicit contributions to WRTL-SPAC. *Id.* § 11.38.1.a.3, 11.38.1.b. WRTL-SPAC is a political committee that does only independent expenditures, and WRTL and WRTL-SPAC do not wish to comply with the limit.

51. Therefore, Plaintiffs WRTL and WRTL-SPAC seek a declaratory judgment that the limit on what entities spend to solicit contributions to their own

28

political committees, WIS. STAT. § 11.38.1.a.3, 11.38.1.b, is unconstitutional *as applied* to their speech. WRTL and WRTL-SPAC further ask that the Court preliminarily and then later permanently enjoin its enforcement.

52. This will allow WRTL and WRTL-SPAC to do their speech, and materially similar speech in the future, without needing to abide by the limit, and without fear of enforcement or prosecution.

### 7. Attribution and Disclaimer Requirements

53. Seventh, WRTL-SPAC reasonably fears it must comply with the regulatory attribution and disclaimer requirements on its radio ads. GAB 1.42.5.

54. Therefore, Plaintiff WRTL-SPAC seeks a declaratory judgment that the regulatory attribution and disclaimer requirements, GAB § 1.42.5, are unconstitutional as applied to its speech and facially. WRTL-SPAC further asks that the Court preliminarily and then later permanently enjoin their enforcement.

55. This will allow WRTL-SPAC to do its speech, and materially similar speech in the future, without needing to comply with the regulatory attribution and disclaimer requirements, and without fear of enforcement or prosecution.

### D. Future Speech

56. In materially similar situations in the future, WRTL and WRTL-SPAC intend to do speech materially similar to all of their planned speech such that Wisconsin law will apply to them as it does now. In addition, those who seek to contribute to WRTL-SPAC intend to do so in the future such that Wisconsin law will apply as it does now.

29

57.     WRTL and WRTL-SPAC will plan their future speech as the need arises, keeping in mind that they often cannot know well in advance of when they want to speak, *see WRTL II,* 551 U.S. at 462-63, and that "timing is of the essence in politics.  It is almost impossible to predict the political future; and when an event occurs, it is often necessary to have one's voice heard promptly, if it is to be considered at all."  *Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 163 (1969) (Harlan, J., concurring).

58.     Despite *Citizens United,* Plaintiffs find themselves in the position of having to consult campaign-finance lawyers or seek declaratory rulings "before discussing the most salient political issues of our day."  130 S.Ct. at 889.

## II.    Discussion

59.     Counts 2 to 11[52] assert various provisions of Wisconsin law fail the appropriate level of scrutiny.  Counts 1[53] and 12[54] assert law challenged in Counts 2 to 5, but not 6 to 11, is unconstitutionally vague, and therefore overbroad, both as applied to speech and facially.  Count 12 then asserts the law challenged in Counts 2 to 8 and 11, but not 9 or 10, is facially unconstitutional.

---

[52] *Infra* Parts II.E-L.

[53] *Infra* Part II.D.

[54] *Infra* Part II.M.

30

## A.  Justiciability

### 1.  Standing

#### a.  Constitutional Standing

60.  First, part of WRTL's and WRTL-SPAC's injury is the chill to speech caused by Defendants' prospective enforcement of Wisconsin law or prosecution of WRTL or WRTL-SPAC.  The relief they seek will redress this chill, thereby allowing them to do their speech without fear of enforcement or prosecution.  Therefore, they have standing to seek relief from the chill.  *See Majors v. Abell,* 317 F.3d 719, 721-22 (7th Cir. 2003) ("*Majors I*").

61.  Second, WRTL and WRTL-SPAC have standing in part because they already do their speech and comply with some of the law they challenge, as opposed to being chilled and therefore not doing their speech.  WRTL and WRTL-SPAC will continue doing their speech and complying with the law while asking the Court to declare the law unconstitutional and enjoin its enforcement so compliance is no longer necessary.  *See Davis v. FEC,* 554 U.S. ____, ____, 128 S.Ct. 2759, 2769 (2008).

#### b.  Prudential Standing

62.  Plaintiffs have prudential standing, because their injuries are in the "zone of interests" the challenged law regulates.  *FEC v. Akins,* 524 U.S. 11, 20 (1998) ("protected or regulated" (quoting *National Credit Union Admin. v. First Nat. Bank & Trust Co.,* 522 U.S. 479, 488 (1998))).

31

### 2. Ripeness

63. Pre-enforcement challenges are ripe when:

- They address laws chilling speech. *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n,* 233 F.3d 981, 986 (7th Cir. 2000) (citing *Commodity Trend,* 149 F.3d 679, 689-90 (7th Cir. 1998)), or

- A speaker is already doing or will do its speech, and is already complying or will comply with the challenged law but asks a court to declare the law unconstitutional and enjoin its enforcement so compliance is no longer necessary. *See Peachlum v. City of York, Pa.,* 333 F.3d 429, 435 (3d Cir. 2003) ("Our stance toward pre-enforcement challenges stems from a concern that a person will merely comply with an illegitimate statute rather than be subjected to [enforcement or] prosecution." (citing *Presbytery of N.J. of Orthodox Presbyterian Church v. Florio,* 40 F.3d 1454, 1467 (3d Cir. 1994))).

Therefore, Plaintiffs' claims are ripe.

64. Government need not have enforced such law against a person challenging it or prosecuted the person for a court to hold the law unconstitutional. *See, e.g., FEC v. Wisconsin Right to Life, Inc.,* 551 U.S. 449, 462-63 (2007) ("*WRTL II*") (addressing mootness).

### B. Irreparable Harm

65. The "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373 (1976). So unless Plaintiffs receive the relief they request, they will suffer irreparable harm. There is no adequate remedy at law. *See id.*

32

C.    **First Principles**

1.    **The Limited Power of Government**

66.    Freedom of speech is the norm, not the exception.  *See, e.g., Citizens United v. FEC,* 558 U.S. ____, ____, 130 S.Ct. 876, 911 (2010) ("more speech, not less, is the governing rule"); *Buckley v. Valeo*, 424 U.S. 1, 14-15 (1976).

67.    The framers established government with the consent of the governed, *see, e.g.,* U.S. CONST. preamble (1787) ("We the people of the United States"); WIS. CONST. preamble ("We, the people of Wisconsin, grateful to Almighty God for our freedom"), and government has only those powers that the governed surrendered to it in the first place.

2.    **The First and Fourteenth Amendments as Restrictions on the Already Limited Power of Government**

68.    This power – including the "constitutional power of Congress to regulate federal elections[,]" *Buckley*, 424 U.S. at 13 & n.16, and each state's parallel power over its own, though not other states', elections, *see, e.g., North Carolina Right to Life, Inc. v. Leake,* 525 F.3d 274, 281 (4th Cir. 2008) ("*NCRL III*") (citing *Buckley,* 424 U.S. at 13); WIS. CONST. art. III – is further constrained by other law, including the First and Fourteenth Amendments.

a.    **Vagueness**

69.    Under the Fourteenth Amendment, U.S. CONST. amend. XIV (1868), state law regulating political speech must not be vague.  *See Citizens United,* 130 S.Ct. at 889 (quoting *Connally v. General Constr. Co.,* 269 U. S. 385, 391 (1926)).

Case 2:10-cv-00669-CNC   Filed 08/05/10   Page 33 of 60   Document 1

70.     To avoid the problems vagueness causes, law regulating political speech must also be simple and concise.  *See id.*

### b.      Overbreadth

71.     The absence of vagueness, however, does not make law regulating political speech constitutional.  *See WRTL II,* 551 U.S. at 479 (quoting *FEC v. Massachusetts Citizens for Life, Inc.,* 479 U.S. 238, 263 (1986) ("*MCFL*")).

72.     Even non-vague law regulating political speech must comply with the First Amendment, which provides that

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. CONST. amend. I (1791).  The First Amendment guards against overbreadth, *Buckley,* 424 U.S. at 80 ("impermissibly broad"),[55] and applies to the states through the Fourteenth Amendment, regardless of whether it is through the Due Process Clause, *Gitlow v. New York,* 268 U.S. 652, 666 (1925) (freedom of speech and freedom of the press), or the Privileges and Immunities Clause.  *Cf. McDonald v. City of Chicago,* 561 U.S. ____, ____, 130 S.Ct. 3020, 3059, 3062-63 (2010) (Thomas, J., concurring in part and concurring in the judgment).

73.     The government's power to regulate *elections* is an exception to the norm of freedom of speech.  *See Citizens Against Rent Control v. City of Berkeley,*

---

[55] One should not confuse this overbreadth with the substantial overbreadth courts address in assessing facial unconstitutionality.  *Infra* Part II.M.

Case 2:10-cv-00669-CNC   Filed 08/05/10   Page 34 of 60   Document 1

454 U.S. 290, 296-97 (1981). The power to regulate *elections* is also self-limiting. To ensure law is not "impermissibly broad," *Buckley* establishes that government may, subject to further inquiry,[56] have the power to regulate donations received and spending for political speech only when they are "unambiguously related to the campaign of a particular … candidate" in the jurisdiction in question, 424 U.S. at 80, or "unambiguously campaign related" for short. *Id.* at 81. This principle helps ensure government regulates only speech that government has the "power to regulate," *NCRL III,* 525 F.3d at 282, *i.e.,* speech that government has a constitutional interest in regulating. *See id.* at 281 (citing *Buckley,* 424 U.S. at 80). This principle is part of the larger principle that law regulating political speech must not be overbroad, *see Buckley,* 424 U.S. at 80 ("impermissibly broad"), and thus overlaps with constitutional scrutiny.

### 3. Determining the Meaning of Political Speech and whether Government may Regulate it

74. *WRTL II* also reaffirms that in determining the meaning of political speech and whether government may regulate it, one looks to the substance of the speech itself. 551 U.S. at 469 (citing *Buckley,* 424 U.S. at 43-44). *WRTL II* all but forecloses considering context to determine the meaning of political speech and whether government may regulate it. *See id.* at 467-73.

---

[56] *E.g., infra* Parts II.F, G.

35

**Count 1: Vagueness**

**D.      Vagueness**

       **1.      The Order of Questions for Political Committee Status**

75.      Plaintiffs re-allege the preceding paragraphs.

76.      In addressing whether a jurisdiction may regulate an entity as a political committee,[57] the law requires considering these questions in this order: Does the entity (1) fall under a political-committee definition that is not unconstitutionally vague and therefore overbroad? If so, does the entity (2) pass the proper "under the control of a candidate" or major-purpose test? *See Buckley v. Valeo,* 424 U.S. 1, 74-79 (1976).

       **2.      Wisconsin Law is Vague, and therefore Overbroad**

77.      Wisconsin's committee/political-committee, "persons other than political committees," and organization definitions are unconstitutionally vague, and therefore overbroad, and the definitions are unconstitutional as applied to WRTL's speech and facially.      Wisconsin may not regulate WRTL as a committee/political committee, "person[] other than [a] political committee[]," or organization *via* this law. This suffices to conclude the political-committee inquiry.

78.      Wisconsin's vague law does not "provide the kind of notice that will enable ordinary people to understand what conduct it" regulates; furthermore, "it may authorize and even encourage arbitrary and discriminatory enforcement." *City*

---

[57] Or whatever label a jurisdiction uses.

Case 2:10-cv-00669-CNC   Filed 08/05/10   Page 36 of 60   Document 1

*of Chicago v. Morales,* 527 U.S. 41, 56 (1999) (citing *Kolender v. Lawson,* 461 U.S. 352, 357 (1983)).

### 3. Why Wisconsin Law is Vague, and therefore Overbroad

79. Wisconsin uses the phrases "for the purpose of influencing the election or nomination for election[,]" "attempting to influence an endorsement or nomination[,]" and "primarily to influence elections" in the political-purposes and political-committee definitions. WIS. STAT. § 11.01.16; GAB 1.28.1. By extension, these phrases arise in:

- The disbursement definition, WIS. STAT. § 11.01.7 ("political purposes"; "political purposes"), contribution definition, *id.* § 11.01.6 (same), committee/political committee definition, *id.* § 11.01.4 ("disbursements"; "contributions"), and incurred-obligation definition. *Id.* § 11.01.11 ("contribution or disbursement").

- The Section 1.28 requirements. *Id.* § 1.28.2 ("persons other than political committees"); *id.* § 1.28.2.a ("disbursements for political purposes").

- The organization definition. *Id.* § 1.91.1.f ("committee"), and

- The Section 1.91 requirements. *Id.* § 1.91.3 ("contributions"; "incurring obligations"; "disbursements"); *id.* § 1.91.7 ("disbursements"); *id.* § 1.91.8 ("contributions"; "disbursements"; "incurred obligations").

80. In addition, Wisconsin uses the phrase "[s]upports or condemns" in the Section 1.28 requirements. GAB § 1.28.3.b.2-3.

81. This language is unconstitutionally vague, and therefore overbroad, and is unconstitutional as applied to WRTL's speech and facially.[58]

---

[58] Part II.M addresses facial unconstitutionality, including vagueness.

37

### E. Overbreadth:  In General

82. In addition, Wisconsin law is unconstitutional as applied to WRTL's and WRTL-SPAC's speech and – with the exception of two counts[59] – facially.[60]

83. Wisconsin law fails the appropriate level of scrutiny.

### Count 2:  The Committee/Political Committee and "Persons other than Political Committees" Definitions

### Count 3:  The Organization Definition

### F. Overbreadth:   The Committee/Political Committee, "Persons other than Political Committees," and Organization Definitions

#### 1. Strict Scrutiny

84. Plaintiffs re-allege the preceding paragraphs.

85. Strict scrutiny applies to government regulation of entities as political committees.  *See Austin v. Michigan Chamber of Commerce,* 494 U.S. 652, 658 (1990) (holding that a state requirement that an entity establish a segregated fund "must be justified by a compelling state interest"), *overruled on other grounds, Citizens United v. FEC,* 558 U.S. \_\_\_\_, \_\_\_\_, 130 S.Ct. 876, 896-914 (2010); *Colorado Right to Life Comm., Inc. v. Coffman,* 498 F.3d 1137, 1146 (10th Cir. 2007) ("*CRLC*") (holding that strict scrutiny applies); *North Carolina Right to Life v. Leake,* 525 F.3d 274, 290 (4th Cir. 2008) ("*NCRL III*") (addressing "narrower means"); *cf. Citizens United,* 130 S.Ct. at 897-98 (holding that strict scrutiny applies to a ban on

---

[59] *Infra* Part II.K.

[60] Parts II.E-L address as-applied challenges, and Part II.M addresses facial unconstitutionality, including overbreadth.

speech and noting the burdens of forming a political committee to do the same speech); *FEC v. Massachusetts Citizens for Life, Inc.,* 479 U.S. 238, 252 (1986) ("*MCFL*") (considering whether a ban on independent expenditures "is justified by a compelling state interest" and noting the burdens of forming a separate segregated fund to do the same speech).

86.    *Buckley v. Valeo* establishes that government may regulate an entity as a political committee only if (1) it is "under the control of a candidate" or candidates or (2) "the major purpose" of the entity is "the nomination or election of a candidate" or candidates.  424 U.S. 1, 79 (1976); *Brownsburg Area Patrons Affecting Change v. Baldwin,* 137 F.3d 503, 505 n.5 (7th Cir. 1998) (quoting *Buckley,* 424 U.S. at 79).

87.    These two tests address whether a *definition* through which government imposes political-committee burdens is constitutional.  *Brownsburg,* 137 F.3d at 505 n.5.

88.     For Wisconsin to regulate an entity as a political committee, it must be under the control of a candidate or candidates for state or local office *in Wisconsin,* or the major purpose of the entity must be the nomination or election of a candidate or candidates for state or local office *in Wisconsin.*

Case 2:10-cv-00669-CNC   Filed 08/05/10   Page 39 of 60   Document 1

89. Determining whether an entity is "under the control of a candidate" or candidates for state or local office in Wisconsin is straightforward, and WRTL is under no such control.[61]

90. Determining whether an entity passes the major-purpose test is also straightforward.

91. WRTL does not have the major purpose of nominating or electing a candidate or candidates for state or local office in Wisconsin: (1) It has not indicated this in its organizational documents or in its public statements, and (2) it does not spend the majority of its money on contributions to, or independent expenditures for, such candidates.[62]

## 2. Applying Strict Scrutiny

92. Wisconsin lacks a compelling interest in regulating entities such as WRTL as political committees — meaning, here, committees/political-committees, "persons other than political committees," or organizations — because they are neither under the control of, nor do they have the major purpose of nominating or electing, candidates for state or local office in Wisconsin. In the alternative, Wisconsin's committee/political-committee, "persons other than political

_____

[61] Although it is not material, WRTL is not under the control of *any* candidate or candidates.

[62] Although it is not material, WRTL does not have the major purpose of nominating or electing *any* candidate or candidates. It has not indicated this in its organizational documents or in its public statements. Nor does it spend the majority of its money on contributions to, or independent expenditures for, *any* candidate or candidates.

40

committees," and organization definitions are not narrowly tailored, because they let Wisconsin regulate entities such as WRTL as committees/political committees, "persons other than political committees," or organizations when they are neither under the control of, nor have the major purpose of nominating or electing, candidates for state or local office in Wisconsin. *See NCRL III,* 525 F.3d at 290; *CRLC,* 498 F.3d at 1146.

93.     Therefore, Wisconsin's committee/political-committee, "persons other than political committees," and organization definitions are unconstitutional as applied to WRTL's speech.

94.     If Wisconsin wanted to regulate, for example, spending for political speech by persons it may *not* regulate as political committees under *Buckley,* 424 U.S. at 74-79, then it could use less-restrictive means.

## Count 4:  The Section 1.28 Requirements

## Count 5:  The Section 1.91 Requirements

**G.     Overbreadth:  The Section 1.28 and Section 1.91 Requirements**

95.     Plaintiffs re-allege the preceding paragraphs.

96.     Sections 1.28 and 1.91 unconstitutionally impose political-committee burdens.[63]  There is no need to reach Part II.G.  *See New Mexico Youth Organized v. Herrera,* ____ F.3d ____, ____, manuscript op. at 13-19 (10th Cir. June 30, 2010)

---

[63] *Supra* Part II.F.

(considering only political-committee status and not going further, as the district court had).[64] *In the alternative,*[65] Sections 1.28 and 1.91 fail exacting scrutiny.

### 1. Exacting Scrutiny

97. Exacting scrutiny applies to disclosure requirements, including attribution, disclaimer, and reporting requirements, both for entities government *may* regulate as political committees under *Buckley,* 424 U.S. at 74-79, *see Davis v. FEC,* 554 U.S. ____, ____, 128 S.Ct. 2759, 2775 (2008) (quoting *Buckley,* 424 U.S. at 64), and for those it may *not.* *See Citizens United,* 130 S.Ct. at 914 (quoting *Buckley,* 424 U.S. at 64, 66).

98. Full-fledged political-committee *disclosure requirements* apply only if the jurisdiction's regulation of entities as political committees – *i.e.,* only if the *definition* through which the jurisdiction imposes political-committee burdens[66] – is constitutional in the first place. So when the definition is unconstitutional – as Wisconsin's committee/political committee, "persons other than political committees," and organization definitions are[67] – the requirements are unnecessary to consider.

---

[64] *Available at* http://www.ck10.uscourts.gov/opinions/09/09-2212.pdf.

[65] VC ¶ 33.

[66] VC ¶¶ 27, 29.

[67] *Supra* Part II.F.

42

### 2.     Spending for Political Speech

99.     When it comes to persons Wisconsin may *not* regulate as political committees under *Buckley,* 424 U.S. at 74-79, the *only* spending for political speech that Supreme Court precedent has established Wisconsin has a sufficiently important interest in regulating is:

- Express advocacy, *id.* at 39-51, 74-81, as defined in *Buckley, id.* at 44 & n.52, 80, *vis-à-vis state or local office in Wisconsin,* and

- Regulable speech "about a candidate shortly before an election." *Citizens United,* 130 S.Ct. at 915:  Electioneering communications as defined in Federal Election Campaign Act, 2 U.S.C. § 431 *et seq.* ("FECA"), *Citizens United,* 130 S.Ct. at 914-16, having a clearly identified candidate *for state or local office in Wisconsin.*

*See, e.g., NCRL III,* 525 F.3d at 281-82.

### 3.     Government's Interest in Disclosure

100.     The "constitutional power of Congress to regulate federal elections[,]" *Buckley,* 424 U.S. at 13 & n.16, and each state's parallel power over its own, though not other states', elections, *see, e.g., NCRL III,* 525 F.3d at 281, cannot include power to gather "information" or "data" for information's or data's sake.

### 4.     Applying Exacting Scrutiny

101.     Sections 1.28 and 1.91 reach beyond spending for political speech that courts allow government to regulate.  That is, Wisconsin reaches beyond what it has a sufficiently important interest in regulating.

102.     Wisconsin law reaches beyond *spending-for-political-speech* boundaries.  That is, it reaches beyond express advocacy as defined in *Buckley,* 424

43

U.S. at 44 n.52, 80, and beyond what the Supreme Court has held may be regulable speech "about a candidate shortly before an election." *Citizens United,* 130 S.Ct. at 915. This occurs through Sections 1.28.1.a, 1.28.1.b, 1.28.2.a, 1.28.2.c, 1.28.3, and 1.91.

103. Because Wisconsin reaches beyond what Wisconsin has a sufficiently important interest in regulating, its law fails exacting scrutiny and is unconstitutional as applied to WRTL's speech, and it is unnecessary to consider whether any factors such as those *Citizens United* mentions, 130 S.Ct. at 915-16, mean there is no "substantial relation" between the disclosure requirements and a "'sufficiently important' government[] interest." *Id.* at 914 (quoting *Buckley,* 424 U.S. at 64, 66).

104. For these reasons, Sections 1.28.1.a, 1.28.1.b, 1.28.2.a, 1.28.2.c, 1.28.3, and 1.91 are unconstitutional as applied to WRTL's speech.

## Count 6: 24 Hour Reporting

### H.    Overbreadth: 24 Hour Reporting

105. Plaintiffs re-allege the preceding paragraphs.

106. The 24 hour reporting requirements[68] are so great that the government's interest does not reflect the burden on the speech. *See Davis,* 128 S.Ct. at 2775 (citing *Buckley,* 424 U.S. at 68). The 24 hour reporting requirement is unconstitutional as applied to WRTL-SPAC's speech. *Citizens for Responsible Gov't*

---

[68] *Supra* Part I.C.2.

*State PAC v. Davidson,* 236 F.3d 1174, 1197 (10th Cir. 2000) (striking down a 24 hour reporting requirement).

## Count 7:  Oath for Independent Disbursements

### I.  Overbreadth:  Oath for Independent Disbursements

107.  Plaintiffs re-allege the preceding paragraphs.

108.  Prior restraints receive strict scrutiny.  *E.g., David K. v. Lane,* 839 F.2d 1265, 1276 (7th Cir. 1988) ("compelling governmental interest" (citing *Brown v. Glines,* 444 U.S. 348, 364 (1980) [(Brennan, J., dissenting)])); *Arizona Right to Life PAC v. Bayless,* 320 F.3d 1002, 1009 (9th Cir. 2003) ("*ARLPAC*").  The oath-for-independent-disbursements requirement[69] is a prior restraint, fails strict scrutiny, and is unconstitutional as applied to WRTL-SPAC's speech.  *See ARLPAC,* 320 F.3d at 1008-09; *but see Samuelson v. LaPorte Community School Corp.,* 528 F.3d 1046, 1051 (7th Cir. 2008) (listing elements of a prior restraint in current Seventh Circuit law under which the oath is not a prior restraint (citations omitted)).

109.  In addition, exacting scrutiny applies to this disclosure requirement,[70] the law fails exacting scrutiny, and the law is unconstitutional as applied to WRTL-SPAC's speech.  The requirement is so great that the government's interest does not reflect the burden on the speech.  *See Davis,* 128 S.Ct. at 2775 (citing *Buckley,* 424 U.S. at 68).

---

[69] *Supra* Part I.C.3.

[70] *See supra* Part I.G.1.

45

**Count 8: Political Committee Reporting Thresholds**

**J.  Overbreadth:  Political Committee Reporting Thresholds**

110.    Plaintiffs re-allege the preceding paragraphs.

111.    As to the political-committee reporting thresholds,[71] the $20 and $100 reporting thresholds are so low that there is no substantial relation to a sufficiently important government interest under exacting scrutiny.  *See Canyon Ferry Road Baptist Church of East Helena, Inc. v. Unsworth,* 556 F.3d 1021, 1033 (9th Cir. 2009) (referring *pre-Citizens United* to tailoring); *id.* at 1036 (Noonan, J., concurring), especially since Wisconsin does not index its $20 or $100 reporting thresholds for inflation.  *See Randall v. Sorrell,* 548 U.S. 230, 261 (2006).

112.    Therefore,    the    political-committee    reporting    thresholds    are unconstitutional as applied to WRTL-SPAC's speech.

**Count 9:  Contribution Limit**

**Count 10: Solicitations for an Entity's Separate Segregated Fund**

**K.  Overbreadth:  The Political Committee Contribution Limit and Solicitations for an Entity's Separate Segregated Fund**

**1.    Strict Scrutiny for Contribution Limit**

113.    Plaintiffs re-allege the preceding paragraphs.

114.    As to the limit on contributions WRTL-SPAC receives,[72] the limit *vis-à-vis WRTL-SPAC's speech* in effect is an independent-expenditure limit.  *See*

---

[71] *Supra* Part I.C.4.

[72] *Supra* Part I.C.5.

46

*EMILY's List v. FEC,* 581 F.3d 1, 14 n.13 (D.C. Cir. 2009) (citing *California Med.*

*Ass'n v. FEC,* 453 U.S. 182, 202 (1981) (Blackmun, J., concurring)); *cf. id.* at 15 n.14.

Independent-expenditure limits receive strict scrutiny, *see FEC v. National*

*Conservative PAC,* 470 U.S. 480, 496-97 (1985) ("*NCPAC*"), and are

unconstitutional. *Buckley,* 424 U.S. at 39-51. Therefore, the limit on WRTL-SPAC's

independent expenditures, *i.e.,* the contribution limit, is unconstitutional *as applied*

to WRTL-SPAC's speech. *See California Med.,* 453 U.S. at 203 (Blackmun, J.,

concurring).

### 2.     Intermediate Scrutiny for Contribution Limit

115.   In the alternative, Wisconsin's contribution limit is unconstitutional as

applied to WRTL-SPAC's speech, because – as a contribution limit – it fails

intermediate scrutiny, just as North Carolina's did. *See NCRL III,* 525 F.3d at 291-

93.

116.   Under intermediate scrutiny, Wisconsin lacks a sufficiently important

interest in limiting contributions to political committees that do only independent

spending for political speech, including independent expenditures.   In the

alternative, Wisconsin's contribution limit is not closely drawn to achieve whatever

sufficiently important interest Wisconsin may have.

117.   In other words, limits on contributions to political committees doing

only   independent   spending   for   political   speech   –   including   independent

expenditures – are unconstitutional regardless of the level of scrutiny. *Long Beach*

*Area Chamber of Commerce v. City of Long Beach,* 603 F.3d 684, 691-99 (9th Cir.

47

2010); *SpeechNow.org v. FEC,* 599 F.3d 686, 692-96 (D.C. Cir. 2010) (*en banc*), *pet. for cert. filed,* (U.S. undated).[73]

### 3. Scrutiny for Limit on Solicitations for an Entity's Separate Segregated Fund

118.   As for the limit on solicitations for an entity's separate segregated fund, *i.e.,* its own political committee,[74] regardless of the level of scrutiny, such a limit is unconstitutional *as applied* to the entity's speech and the political committee's speech when the political committee does only independent spending for political speech.  Wisconsin lacks a sufficiently important interest in this limit. In the alternative, the limit is not closely draw to achieve whatever sufficiently important interest Wisconsin may have.

### Count 11: Attribution and Disclaimer Requirements

### L.   Overbreadth: Attribution and Disclaimer Requirements

119.   Plaintiffs re-allege the preceding paragraphs.

120.   The regulatory attribution and disclaimer requirements[75] are so great that the government's interest does not reflect the burden on the speech.  *See Davis,* 128 S.Ct. at 2775.

---

[73] *Available at* http://www.scotusblog.com/wp-content/uploads/2010/07/SpeechNow-petition-7-23-10.pdf.

[74] *Supra* Part I.C.6.

[75] *Supra* Part I.C.7.

48

121.    They are so burdensome that government has no sufficiently important interest in them.    In the alternative, there is no substantial relation to any sufficiently important government interest.    They are unconstitutional as applied to WRTL-SPAC's speech.

### Count 12:  Vagueness and Overbreadth:
### Facial Unconstitutionality

**M.    Facially Unconstitutional**

122.    Plaintiffs re-allege the preceding paragraphs.

123.    A state law is facially unconstitutional under the First Amendment, *Washington State Grange v. Washington State Republican Party,* 552 U.S. 442, 449 n.6 (2008) (citing *New York v. Ferber,* 458 U.S. 747, 769-71 (1982)), and a state law burdening free speech is facially unconstitutional for vagueness under the Fourteenth Amendment, *see United States v. Salerno,* 481 U.S. 739, 745 (1987) (citing *Schall v. Martin,* 467 U.S. 253, 269 n.18 (1984)); *Kolender v. Lawson,* 461 U.S. 352, 358 & n.8 (1983), *followed in City of Chicago v. Morales,* 527 U.S. 41, 60 (1999), when it reaches "a substantial amount of protected speech … not only in an absolute sense, but also relative to the [law's] plainly legitimate sweep." *United States v. Williams,* 553 U.S. 285, 292-93 (2008) (citing *Board of Trs. of State Univ. of N. Y. v. Fox,* 492 U.S. 469, 485 (1989); *Broadrick v. Oklahoma,* 413 U.S. 601, 615 (1973)).

124.    Whether the challenge is based on the First Amendment, Fourteenth Amendment, or both, all of the law that is unconstitutional as applied to particular

49

Plaintiffs' speech – except the aggregate contribution limit and the limit on solicitations for an entity's separate segregated fund[76] – is also facially unconstitutional.

### N. Narrowing Glosses, Certification, and Severability

125. Unlike in *Buckley v. Valeo,* 424 U.S. 1, 44 & n.52, 80 (1976), no narrowing gloss saves the unconstitutional law in this action. Nor is certifying a question appropriate where, as here, the state law is not fairly susceptible to a narrowing gloss. Furthermore, severing the unconstitutional language from the remaining language – which is a question of state law, is not an option in this action.

## III. Prayers for Relief

126. Plaintiff WRTL seeks a declaratory judgment that the committee/political-committee, "persons other than political committees," and organization definitions, WIS. STAT. § 11.01.4; GAB §§ 1.28.1.a, 1.28.2 ("Individuals other than candidates and persons other than political committees"), 1.91.1.f, are unconstitutional as applied to WRTL's speech and facially. WRTL further asks that the Court preliminarily and then later permanently enjoin their enforcement.[77]

127. In the alternative to the previous paragraph, Plaintiff WRTL seeks a declaratory judgment that Section 1.28, Section 1.91, and the burdens they impose

---

[76] *Supra* Part II.K.

[77] VC ¶ 31.

Case 2:10-cv-00669-CNC   Filed 08/05/10   Page 50 of 60   Document 1

are unconstitutional as applied to WRTL's speech and facially. WRTL further asks that the Court preliminarily and then later permanently enjoin their enforcement.[78]

128. Plaintiff WRTL-SPAC seeks a declaratory judgment that the 24 hour reporting requirements, WIS. STAT. § 11.12.5-6, are unconstitutional as applied to WRTL-SPAC's speech and facially. WRTL-SPAC further asks that the Court preliminarily and then later permanently enjoin their enforcement.[79]

129. Plaintiff WRTL-SPAC seeks a declaratory judgment that the oath-for-independent-disbursements requirement, WIS. STAT. § 11.06.7, is unconstitutional as applied to WRTL-SPAC's speech and facially. WRTL-SPAC further asks that the Court preliminarily and then later permanently enjoin its enforcement.[80]

130. Plaintiff WRTL-SPAC seeks a declaratory judgment that the political-committee reporting thresholds, WIS. STAT. § 11.06.1.a, b, d, g, h, are unconstitutional as applied to WRTL-SPAC's speech and facially. WRTL-SPAC further asks that the Court preliminarily and then later permanently enjoin their enforcement.[81]

131. Plaintiff WRTL-SPAC seeks a declaratory judgment that the limit on contributions it receives, WIS. STAT. §§ 11.26.4, 11.16.2, 11.24, 11.25, is

---

[78] VC ¶ 33.

[79] VC ¶ 36.

[80] VC ¶ 42.

[81] VC ¶ 45.

51

unconstitutional *as applied* to its speech. WRTL-SPAC further asks that the Court preliminarily and then later permanently enjoin its enforcement.[82]

132. Plaintiffs WRTL and WRTL-SPAC seek a declaratory judgment that the limit on what entities spend to solicit contributions to their own political committees, WIS. STAT. § 11.38.1.a.3, 11.38.1.b, is unconstitutional *as applied* to their speech. WRTL and WRTL-SPAC further ask that the Court preliminarily and then later permanently enjoin its enforcement.[83]

133. Plaintiff WRTL-SPAC seeks a declaratory judgment that the regulatory attribution and disclaimer requirements, GAB § 1.42.5, are unconstitutional as applied to its speech and facially. WRTL-SPAC further asks that the Court preliminarily and then later permanently enjoin their enforcement.[84]

134. Any narrowing gloss would be incorrect as a matter of law. If the Court nevertheless held that a narrowing gloss were possible, Plaintiff WRTL prays for the following relief:

> ● A declaratory judgment limiting Wisconsin's committee/political-committee, "persons other than political committees," and organization definitions, WIS. STAT. § 11.01.4; GAB §§ 1.28.1.a, 1.28.2 ("Individuals other than candidates and persons other than political committees"), 1.91.1.f, and by extension the burdens Wisconsin imposes on political-committees/committees, "persons other than political committees," and organizations, to entities that are under the control of, or have the

---

[82] VC ¶ 48.

[83] VC ¶ 51.

[84] VC ¶ 54.

major purpose of nominating or electing, a candidate or candidates for state or local office in Wisconsin,[85] and

● A declaratory judgment limiting the burdens Sections 1.28 and 1.91 impose to (a) express advocacy as defined in *Buckley vis-à-vis* state or local office in Wisconsin or (b) electioneering communications as defined in FECA having a clearly identified candidate for state or local office in Wisconsin.[86]

Meanwhile, Plaintiff WRTL-SPAC prays for:

● A declaratory judgment excluding, from Wisconsin's limits on contributions that political committees receive, Wis. Stat. §§ 11.26.4, 11.16.2, 11.24, 11.25, those political committees that do only independent expenditures as defined in *Buckley vis-à-vis* state or local office in Wisconsin.[87]

---

[85] In the alternative, Plaintiff WRTL prays that the Court limit the definitions and burdens to entities that are under the control of, or have the major purpose of nominating or electing, *any* candidate or candidates.

Plaintiff WRTL submits this alternative would also be incorrect, because, for example, it would allow Wisconsin to regulate as Wisconsin political committees those entities that are under the control of, or have the major purpose of nominating or electing, candidates for *federal* office or candidates for *state or local office in another state*. This can easily turn against Wisconsin and allow these non-Wisconsin jurisdictions to regulate entities that really do pass the "under the control of a candidate" or major-purpose test in Wisconsin.

Moreover, under this approach, a jurisdiction could impose political-committee burdens on entities whose activity is minimal – or even zero – in the jurisdiction.

[86] In the alternative, Plaintiff WRTL prays that the Court limit the definition and corresponding requirements to (a) express advocacy as defined in *Buckley vis-à-vis any* office or (b) electioneering communications as defined in FECA having *any* clearly identified candidate.

[87] In the alternative, Plaintiff WRTL-SPAC prays that the Court exclude, from Wisconsin's limit on contributions that political committees receive, those political committees that do only independent expenditures as defined in *Buckley vis-à-vis any* clearly identified candidate.

53

● A declaratory judgment excluding, from Wisconsin's source bans on contributions that political committees receive, WIS. STAT. §§ 11.38.1.a, 11.24, 11.25, those political committees that do only independent expenditures as defined in *Buckley vis-à-vis* state or local office in Wisconsin.[88]

And Plaintiffs WRTL and WRTL-SPAC pray for:

● A declaratory judgment excluding, from Wisconsin's limit on what entities spend to solicit contributions to their own political committees, WIS. STAT. § 11.38.1.a.3, 11.38.1.b, those political committees that do only independent expenditures as defined in *Buckley vis-à-vis* state or local office in Wisconsin.[89]

---

[88] In the alternative, Plaintiff WRTL-SPAC prays that the Court exclude, from Wisconsin's source bans on contributions that political committees receive, those political committees that do only independent expenditures as defined in *Buckley vis-à-vis any* clearly identified candidate.

[89] In the alternative, Plaintiffs WRTL and WRTL-SPAC pray that the Court exclude, from Wisconsin's limit on what entities spend to solicit contributions to their own political committees, those political committees that do only independent expenditures as defined in *Buckley vis-à-vis any* clearly identified candidate.

135.    Plaintiffs further seek costs and attorneys' fees under 42 U.S.C. § 1988

(2000) and any other applicable statute or authority, and further seek other relief

this Court in its discretion deems just and appropriate.

Respectfully submitted,


/s/ Michael D. Dean                          /s/ Randy Elf
Michael D. Dean,                             James Bopp, Jr., Ind. No. 2838-84
Wis. No. 1019171                             Randy Elf, New York No. 2863553
FIRST FREEDOMS                               Joseph A. Vanderhulst, Ind. No. 28106-20
FOUNDATION, INC.                             BOPP, COLESON & BOSTROM
20975 Swenson Drive, Suite 125               1 South Sixth Street
Waukesha, Wis.  53186                        Terre Haute, Ind.  47807
Telephone (262) 798-8046                     Telephone (812) 232-2434
Facsimile  (262) 798-8045                    Facsimile  (812) 234-3685
*Local Counsel for Plaintiffs*               *Lead Counsel for Plaintiffs*


August 4, 2010

55

**Verification by**

**Wisconsin Right to Life Committee, Inc.**

I, Barbara Lyons, declare as follows:

I am the executive director of Wisconsin Right to Life Committee, Inc.

I have personal knowledge of the entity's activities, including those set out in this complaint, and if called upon, I would competently testify as to them.

I verify under penalty of perjury under the laws of the United States of America that the factual statements in this complaint concerning the entity are true.

/s/ Barbara Lyons
Wisconsin Right to Life Committee, Inc.
By Barbara Lyons
Executive Director

August 4, 2010

## Verification by

## Wisconsin Right to Life State Political Action Committee

I, Sue Armacost, declare as follows:

I am the director of Wisconsin Right to Life State Political Action Committee.

I have personal knowledge of the entity's activities, including those set out in this complaint, and if called upon, I would competently testify as to them.

I verify under penalty of perjury under the laws of the United States of America that the factual statements in this complaint concerning the entity are true.

/s/ Sue Armacost
Wisconsin Right to Life
State Political Action Committee
By Sue Armacost
Director

August 4, 2010

## Verification by

## Jim Dragani

I, Jim Dragani, verify under penalty of perjury under the laws of the United States of America that the factual statements in this complaint concerning me are true.

/s/ Jim Dragani
Jim Dragani

August 4, 2010

58

**Verification by**

**Terry Kohler**

I, Terry Kohler, verify under penalty of perjury under the laws of the United States of America that the factual statements in this complaint concerning me are true.

/s/ Terry Kohler_____
Terry Kohler

August 4, 2010

**Verification by**

**Mary Kohler**

I, Mary Kohler, verify under penalty of perjury under the laws of the United States of America that the factual statements in this complaint concerning me are true.


/s/ Mary Kohler_____
Mary Kohler

August 4, 2010