

Slip Copy                                                                                                          Page 1
Slip Copy, 2009 WL 1457972 (N.D.Fla.)
**(Cite as: 2009 WL 1457972 (N.D.Fla.))**

H Only the Westlaw citation is currently available.

United States District Court, N.D. Florida,
Tallahassee Division.
The BROWARD COALITION OF CONDOMINIUMS, HOMEOWNERS ASSOCIATIONS AND COMMUNITY ORGANIZATIONS INC., Charlotte Greenbarg, University of Florida College Libertarians, Neal Conner, National Taxpayers Union, National Taxpayers Union Foundation, and Duane Parde, Plaintiffs,
v.
Kurt S. BROWNING, in his official capacity as Florida Secretary of State, Jorge L. Cruz-Bustillo, in his official capacity as Chair of the Florida Elections Commission; and Donald W. Rhodes, Karen H. Unger, Jose Luis Rodriguez, Thomas E. Rossin, Gregory King, Julie B. Kane, Beleria F. Floyd, and William H. Hollimon, in his official capacities as members of the Florida Elections Commission, Defendants.
No. 4:08cv445-SPM/WCS.

May 22, 2009.

West KeySummary

**Constitutional Law**  1688

92 Constitutional Law
    92XVIII Freedom of Speech, Expression, and Press
        92XVIII(F) Politics and Elections
            92k1688 k. Elections, Voting, or Ballot Access in General. Most Cited Cases

**Elections** 144 311

144 Elections
    144XI Violations of Election Laws
        144k311 k. Constitutional and Statutory Provisions. Most Cited Cases
The state of Florida failed to meet its burden of demonstrating a compelling interest for regulating most of the speech that was captured by its electioneering communication laws. The regulation could not be justified by the government's interest in preventing political corruption because the communication that was swept up in the regulation was issue advocacy speech, not express advocacy. Nonprofit groups sought a permanent injunction against Florida's ability to enforce electioneering communications laws as complying meant that the nonprofits would be subject to registration and disclosure nearly identical to those that po-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.
Case 2:10-cv-00669-CNC   Filed 08/05/10   Page 1 of 12   Document 3-1

litical committees must follow. U.S.C.A. Const.Amend. 1; West's F.S.A. §§ 106.011(18)(a), 106.011(19).

Darren Alter Schwartz, Rumberger Kirk & Caldwell PA, Tallahassee, FL, Paul Michael Sherman, Robert W. Gall, William H. Mellor, Arlington, VA, for Plaintiffs.

Jonathan Alan Glogau, Tallahassee, FL, for Defendants.

### ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

STEPHAN P. MICKLE, District Judge.

**\*1** This cause comes before the Court on Plaintiffs' Motion for Summary Judgment (doc. 54), Defendants' response in opposition (doc. 65), and Plaintiffs' reply (doc. 67). Plaintiffs have requested oral argument on their motion. However, the Court finds that with the extensive legal motions filed by the parties and the benefit of oral argument on the preliminary injunction motion, the Court can review the parties' respective positions and make A finding without the aid of additional oral argument.

### FACTUAL BACKGROUND

Plaintiffs are four groups and their respective leaders. The Broward Coalition is an all-volunteer, not-for-profit 501(c)(4) corporation that has been serving the Broward County, Florida, community for over 25 years. A coalition of condominium associations, homeowners associations, and community organizations, the Coalition is dedicated to helping its members as well as the larger community make decisions about issues that affect them-locally, statewide, and nationally. Charlotte Greenbarg serves as the group's president. The University of Florida College Libertarians is a student-run campus club that seeks to spread the ideals of liberty and self-ownership. Neal Conner serves as the club's president. The National Taxpayers Union (NTU) is a 501(c) (4) nonprofit, nonpartisan organization founded almost 40 years ago to promote lower taxes and smaller government at all political levels. The National Taxpayers Union Foundation (NTUF) is NTU's 501(c)(3) affiliate. Duane Parde is the president of both NTU and NTUF.

Before the election on November 4, 2008, Plaintiffs published communications that (as the parties agree) would have required them to be regulated pursuant to Florida's electioneering communications laws. For example, the Broward Coalition published a page in its November newsletter about pending statewide ballot issues. The newsletter was distributed to members and non-members and posted on the Internet. Because of the electioneering communications law, the Coalition removed old newsletters and donor lists from their website in order to

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

ensure that more than 1,000 would not view it. The Coalition also removed from its website references to candidates for fear that failing to do so would subject them to regulation. For the same reason, but for this Court's preliminary injunction, the University of Florida College Libertarians would have had to refrain from putting out fliers on campus advertising events at which they want to host candidates. NTU collected and drafted information regarding several of Florida's ballot issues. However, because of concerns that it would violate the electioneering communication laws, it did not include that information in this year's ballot guide. Like the other Plaintiffs, but for this Court's preliminary injunction, NTU and NTUF would have had to refrain from speaking because of concerns that the State's electioneering communications laws will be applied to its speech and force it to submit to burdensome registration, reporting, and disclosure requirements for electioneering communications organizations.

**\*2** Plaintiffs state that complying with these requirements would consume a considerable amount of their time and resources and would hinder their groups' ability to pursue their respective missions. NTU is particularly concerned about being compelled to reveal the identity of its donors, some who prefer to remain anonymous because they are concerned about retaliation from the government should their identities become known.

None of the above-mentioned publications contain express advocacy (that is, phrases such as "vote for" or "vote against"), which is regulated by Florida's laws concerning political committees. But because the publications are "electioneering communications," they require that Plaintiff must first register with the state and comply with rules that are nearly identical to those that political committees must follow. Failing to do so will subject them to fines and even criminal prosecution. They seek a permanent injunction against the state's ability to enforce these laws so that Plaintiffs may continue to issue their publications without being subject to the "electioneering communication" laws. Those laws are described below.

**FLORIDA'S ELECTIONEERING COMMUNICATIONS LAWS**

Under Florida law, an "electioneering communication" includes "a paid expression in any communications media" other than the spoken word in direct conversation that "[r]efers to or depicts a clearly identified candidate for office or contains a clear reference indicating that an issue is to be voted on at an election, without expressly advocating the election or defeat of a candidate or the passage or defeat of an issue."Fla. Stat. § 106.011(18)(a). Certain narrow exceptions apply; excluded from the definition are statements or depictions in a pre-existing organization's newsletter that is dis-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

tributed only to members of that organization; statements in various news media; and communications that constitute a public debate or forum that include at least two opposing candidates or one advocate and one opponent of an issue.Fla. Stat. § 106.011(18)(b). Moreover, for speech about candidates, the communication must be targeted to reach the relevant electorate-that is, to reach 1,000 or more people in the geographic area the candidate would represent if elected-to be captured by the law. Fla. Stat. § 106.011(18)(a)2. "Communications media" means "broadcasting stations, newspapers, magazines, outdoor advertising facilities, printers, direct mail, advertising agencies, the Internet, and telephone companies." § 106.011(13).

Under the statutory scheme, all "electioneering communications" in Florida, by both groups and individuals (except those for which an individual spends less than $100), are regulated. *See*Fla. Stat. §§ 106.011(1)(b)3 & 106.071.

A group that makes an electioneering communication must register as an "electioneering communications organization" ("ECO"). An ECO is any group not otherwise registered under Florida's campaign financing law "whose activities are limited to making expenditures for electioneering communications or accepting contributions for the purpose of making electioneering communications."§ 106.011(19). The Secretary of State-through the Division of Elections-interprets this provision to include any group whose election-related activities are limited to electioneering communications. This reading makes sense, given that the definition is found within Chapter 106, which regulates only election-related activities.

**\*3** Electioneering communications organizations are "required to register with and report expenditures and contributions ... to the Division of Elections in the same manner, at the same time, and subject to the same penalties as a political committee supporting or opposing an issue or a legislative candidate, except as otherwise specifically provided in [Chapter 106]."§ 106.011(1)(b) 3. Thus, any group that is an electioneering communications organization is subject to a wide array of requirements, including:

- Registering with the government within 24 hours of its organization or receiving information that causes it to anticipate receiving or expending funds for an electioneering communication, Fla. Stat. § 106.03(1)(b)

- Appointing a campaign treasurer (or custodian of the books), § 106.03(2)(d)

- Designating a depository, § 106.03(2)(k)

- Making regular reports, § 106.07(1)

- Recording expenditures, §

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.
Case 2:10-cv-00669-CNC     Filed 08/05/10     Page 4 of 12     Document 3-1

106.07(4)(a)

• Disclosing all donors-even those who never intended their gift to go Towards political speech, § 106.07(4)(a)1 and Gall Decl., Ex. A at 3

• Restricting expenditures and contributions, including not spending money raised in the five days before the election, refusing contributions by 527s or 501(c)(4)s that are not-themselves-registered, and refusing all cash contributions over $50, § 106.08(4)(b), § 106.08(5)(d), & § 106.09

• Including a prominent "disclaimer" on each communication that reads "Paid electioneering communication paid for by (Name and address of person paying for communication)." § 106.1439

• Allowing random audits by the government, § 106.22(10).

According to the Commission, there are almost 100 separate violations possible under the campaign finance code. *See* Florida Elections Commission, Jurisdiction, http://www.fec.state.fl.us/juris/index.html. The Secretary of State and "any person" may file a sworn complaint with the Florida Elections Commission. Fla. Stat. § 106.26(1). All violations are subject to civil penalties, Fla. Stat. §§ 106.265(1) & 106.07(8), and many are subject to additional criminal penalties and jail time. *See,* e.g., §§ 106.08(7), 106.09(2), 106.19, & 106.1439(2). Information from reports filed with the Secretary is made available on the Secretary's website. *See*Fla. Stat. § 106.0706.

Under § 106.071, "each individual who makes an expenditure for an electioneering communication which is not otherwise reported pursuant to [Chapter 106]"-i.e., is not reported by a group that is an ECO, a political committee, or a committee of continuous existence-and spends $100 or more to do so has to "file periodic reports of such expenditures in the same manner, at the same time, subject to the same penalties, and with the same officer as a political committee supporting or opposing such candidate or issue."Thus, the only way that an electioneering communication does not have to be regulated is (1) if it is made by an individual and (2) the individual spends less than $100 on the communication.

### STANDARD FOR SUMMARY JUDGMENT

**\*4** Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."Fed.R.Civ.P. 56(c). An issue is "material" if it might affect the out-

come of the case under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id.* The basic inquiry by the court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."*Id.* at 251.

In this case, both parties agree that this is a purely legal matter and it may be resolved on summary judgment, without the need for submission to a jury. This Court previously granted a preliminary injunction for the Plaintiffs because they had met their burden that they were likely to succeed on the merits of their case. The burden at the summary judgment stage is even higher because Plaintiffs must demonstrate that "as a matter of law," final judgment in the case should be entered in their favor. However, because the challenged law has not changed since the order granting the preliminary injunction, and the materials submitted by the parties in support of their positions on summary judgment have not highlighted any factual disputes, the legal analysis here will be very similar to that prior order. This Court's interpretation of the Defendants' electioneering communication laws has not changed and Defendants have failed to convince this Court that its prior interpretation of the facts and application of the law were otherwise incorrect.

## ANALYSIS

The first step in this analysis is to determine the standard that should be applied to Defendants' regulation. The First Amendment protects political speech, political association, and political expression. *Morse v. Frederick,* 551 U.S. 393, 127 S.Ct. 2618, 168 L.Ed.2d 290 (2007); *Buckley v. Valeo,* 424 U.S. 1, 15, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). The state regulation in question applies to groups that are primarily engaged in political speech about issues that their respective organizations support. The challenged law subjects these organizations to significant reporting and disclosure requirements which add significantly to the organizations' expenditures and time commitment. Plaintiffs argue that because the regulation burdens political speech, it is subject to strict scrutiny. Defendants argue that the regulation consists only of reporting and disclosure requirements and it does not burden political speech, therefore, the regulation should be subject to intermediate scrutiny. Defendants' argument is misplaced.

The reporting and disclosure requirements are applied as a result of the organization's mere mention of a candidate or ballot measure in that organization's communication. Because the regulation applies to certain communication and not other, it is

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

content-based. *Burk v. Augusta-Richmond County,* 365 F.3d 1247, 1251 (11th Cir.2004) (finding an ordinance that applies only to "public demonstration" that displays "support for, or protest of, any person, issue, political or other cause or action" is regulation that targets only political speech and is therefore content-based). Additionally, because this regulation allows for the communication to be burdened by the disclosure and reporting requirements in advance of the act of communicating their message, it constitutes a prior restraint. *DA Mortg., Inc. v. City of Miami Beach,* 486 F.3d 1254, 1269 (11th Cir.2007). Any type of prior restraint comes before a court "with a 'heavy presumption' against its constitutional validity." *Organization for a Better Austin v. Keefe,* 402 U.S. 415, 419, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971), quoting *Carroll v. Princess Anne,* 393 U.S. 175, 181, 89 S.Ct. 347, 21 L.Ed.2d 325 (1968)). Contrary to Defendants' protestations, the burden placed on Plaintiffs and similar organizations by this regulation is so significant that it inevitably results in prohibiting the political speech of the organizations. Accordingly, it is subject to strict scrutiny. *Burk,* 365 F.3d at 1251 (content-based prior restraints "are presumptively unconstitutional and face strict scrutiny"). Therefore, the regulation is constitutional " 'only if it constitutes the least restrictive means of advancing a compelling government interest.'" *KH Outdoor, LLC v. Trussville,* 458 F.3d 1261, 1268 (11th Cir.2006) (quoting *Solantic, LLC v. City of Neptune Beach,* 410 F.3d 1250, 1254 (11th Cir.2005)).

**\*5** Defendants argue that this Court should instead apply a heightened form of intermediate scrutiny that the Supreme Court has applied to "organizations that are under the control of a candidate or the major purpose of which is the nomination or election of a candidate."*See, e.g., Buckley v. Valeo,* 424 U.S. 1, 79, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). The Supreme Court, however, has never applied this lesser standard to such a broad regulation of core political speech by grassroots groups like Plaintiffs. First, in regard to ballot-issue speech, in every case the Supreme Court has dealt with a law that burdened speech in that context, it has applied strict scrutiny and struck down the law. *See Buckley v. Am. Const. Law Found.,* 525 U.S. 182, 204, 119 S.Ct. 636, 142 L.Ed.2d 599 (1999); *Meyer v. Grant,* 486 U.S. 414, 420, 428, 108 S.Ct. 1886, 100 L.Ed.2d 425 (1988); *McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334, 345-47, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995); *Citizens Against Rent Control/Coalition for Fair Hous. v. Berkeley,* 454 U.S. 290, 294, 300, 102 S.Ct. 434, 70 L.Ed.2d 492 (1981); *First Nat'l Bank of Boston v. Bellotti,* 435 U.S. 765, 786, 795, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978). Second, in regard to speech about candidates, the Court has always applied strict scrutiny where the speech at issue was by groups that did not have the major

purpose of influencing elections, *see Fed. Election Comm'n v. Massachusetts Citizens for Life, Inc. ( MCFL), 479 U.S. 238, 256, 263, 107 S.Ct. 616, 93 L.Ed.2d 539,* or where the speech at issue was not the functional equivalent of express advocacy. *See Fed. Election Comm'n v. Wisc. Right to Life (WRTL II),* 127 S.Ct. 2657, 2664.

Even if this Court were to apply scrutiny that is less than strict, the outcome would be no different. No matter what level of scrutiny applies, when First Amendment rights are at stake, the government has the burden of proving the constitutionality of the challenged law. *See Watchtower Bible & Tract Soc'y of New York City v. Vill. of Stratton,* 536 U.S. 150, 170, 122 S.Ct. 2080, 153 L.Ed.2d 205 (2002) ("When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions.") (Breyer, J., concurring) (quoting *United States v. Playboy Entertainment Group, Inc.,* 529 U.S. 803, 816, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000). Furthermore, if the State lacks the power to regulate Plaintiffs' speech, it simply cannot regulate it, even under a reduced level of scrutiny. See *Nat'l Right to Work Legal Def. & Educ. Found., Inc. v. Herbert,* 581 F.Supp.2d 1132, 1146 (D.Utah Sept.8, 2008) ("[B]efore applying exacting scrutiny ... the court must first determine whether the activities being regulated are unambiguously campaign related [and therefore potentially subject to regulation]."); see also *N.C. Right to Life, Inc. v. Leake,* 525 F.3d 274, 281 (4th Cir .2008) ("[O]nly unambiguously campaign related communications have a sufficiently close relationship to the government's acknowledged interest in preventing corruption to be constitutionally regulable.").

As this Court made clear in its order granting preliminary injunction, and as the Supreme Court made clear in its decision on campaign finance law, *Buckley v. Valeo,* governments may regulate only those narrow categories of political speech that are "unambiguously related to the campaign of a particular ... candidate." 424 U.S. at 80. There are only two narrow categories that fall within that exception. The first of these categories includes "communications that in express terms advocate the election or defeat of a clearly identified candidate for federal office, "also referred to as express advocacy. *Buckley,* 424 at 44.The second category includes communications that constitute "the functional equivalent of express advocacy." *McConnell v. Fed. Election Comm'n,* 540 U.S. 93, 206, 124 S.Ct. 619, 157 L.Ed.2d 491 (2003). In order to fall into this very narrowly drawn second category, speech must satisfy two requirements. *Leake,* 525 F.3d at 282. First, the speech must be "susceptible of no reasonable interpretation other than as an appeal to vote for or against a specific candidate." *Id.* (quoting *WRTL II,* 127 S.Ct. at 2667). Second, because the Court has never held that the regulation of

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.
Case 2:10-cv-00669-CNC     Filed 08/05/10     Page 8 of 12     Document 3-1

"electioneering communications" beyond how that term is defined in the Bipartisan Campaign Reform Act of 2002 ("BCRA") is permissible, the outer limit of regulation tracks BCRA's definition: a "broadcast, cable, or satellite communication that refers to a clearly identified candidate within sixty days of a general election or thirty days of a primary election." Leake, 525 F.3d at 282 (citing *WRTL II,* 127 S.Ct. at 2669 n. 7). As the Court noted in WRTL II, it "has never recognized a compelling interest in regulating ads ... that are neither express advocacy nor its functional equivalent." 127 S.Ct. at 2671. Similarly, this Court also declines to do so now. Defendants argue that *Buckley* and *McConnell* allow states to require disclosure for the full range of electioneering communications. But the "entire range" to which *McConnell* referred was speech that met the narrow definition of "electioneering communication" in BCRA. No broader definition was before that court. Therefore, this Court declines to read *Buckley* or *McConnell* as sanctioning the regulation of all the speech encompassed within Florida's expansive and much broader definition of "electioneering communication." Furthermore, *WRTL II* held that there is a line between speech that is the functional equivalent of express advocacy and the vast majority of political speech falling outside that category and that line is constitutionally compelled. 127 S.Ct. at 2670-74.

**\*6** As described above, Plaintiffs' speech is not express advocacy. Indeed, that is one of the reasons that the Plaintiffs' speech qualifies as "electioneering communications." If Plaintiffs' speech *were* express advocacy, the plaintiff groups would be regulated as "political committees" rather than as "electioneering communications organizations." Fla. Stat. § 106.011(1)(a) 1. Nor is it the functional equivalent of express advocacy because, for several reasons, the Plaintiffs' speech does not satisfy the two-pronged test from *WRTL II,* discussed earlier. First, none of the Plaintiffs are issuing a communication via broadcast, cable, or satellite, as was the case in BCRA's definition (which establishes the outer bounds of permissible regulation). Second, all of the speech at issue here is susceptible of a reasonable interpretation *other than* as an appeal to vote for or against that candidate. Third, Plaintiffs' speech relating to ballot issues cannot, by definition, be express advocacy because it has nothing to do with advocating for a particular candidate.

The Supreme Court has never equated advocacy of particular ballot issues to express advocacy for or against a candidate; indeed, it has repeatedly recognized that advocacy of ballot issues enjoys even stronger protection than express advocacy for candidates because it raises absolutely no danger of corruption or the appearance of corruption. *See McIntyre,* 514 U.S. at 356 ("Not only is the Ohio statute's in-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:10-cv-00669-CNC      Filed 08/05/10      Page 9 of 12      Document 3-1

fringement on [ballot-issue related] speech more intrusive than the *Buckley* disclosure requirement, but it rests on different and less powerful state interests."); *Bellotti,* 435 U.S. at 790 ("The risk of corruption perceived in cases involving candidate elections ... simply is not present in a popular vote on a public issue."); *Citizens Against Rent Control,* 454 U.S. at 297-98 (same).

Defendants' arguments that the Plaintiffs' ballot issue speech can be the functional equivalent of express advocacy-once again, a term developed in and confined to the candidate context, simply find no basis in *Buckley, McConnell, WRTL II,* or any other case from the Supreme Court. If expressing an opinion about ballot issues could constitute the functional equivalent of express advocacy, then the State would be able to regulate virtually all speech about ballot issues. This would mean that political, ballot issue speech and communication would receive less, not more, protection than speech about candidates. That would be an untenable outcome, one certainly not anticipated or intended by the Supreme Court or the founders of this democracy. *See Nixon v. Shrink Missouri Government PAC,* 528 U.S. 377, 405, 120 S.Ct. 897, 145 L.Ed.2d 886 (2000) (KENNEDY, J., dissenting) ("Political speech in the course of elections [is] the speech upon which democracy depends").

While it is true that the legislature has the power the regulate elections, it does not have the power to regulate purely political discussions about elections. Furthermore, this legislation cannot be justified by the government's interest in preventing political corruption because the communication that is swept up in this legislation is issue advocacy speech, pure political speech. Accordingly, Defendants have not met their burden of demonstrating a compelling interest for regulating most of the speech that captured by its electioneering communications laws.

**\*7** Furthermore, because Plaintiffs' speech cannot be regulated, it necessarily follows that the State has no interest in requiring Plaintiffs to submit to a prior restraint on their speech; to restructure their organizations and comply with registration, reporting, and disclosure requirements requiring, among other things, information regarding all of their donors; to surrender their ability to speak and associate anonymously; and to accept restrictions on Plaintiffs' right to make expenditures five days before an election. If disclosure requirements are part of a broader regulatory regime that is unconstitutional, then the disclosure requirements are unconstitutional. *See Davis v. Fed. Election Comm'n,* --- U.S. ----, ----, 128 S.Ct. 2759, 2775, 171 L.Ed.2d 737 (2008) (striking down disclosure requirements that were part of the asymmetrical contribution limits for the so-called Millionaires' Amendment).

With regard to facial validity, the only way for this regulation to be valid on its face is if it regulates the functional equivalent of express advocacy in a way that is neither overbroad or vague. "[A] law may be overturned as impermissibly overbroad because a 'substantial number' of its applications are unconstitutional, 'judged in relation to the statute's plainly legitimate sweep.' " *Wash. State Grange v. Wash. State Republican Party,* ---U.S. ----, ---- n. 6, 128 S.Ct. 1184, 1190 n. 6, 170 L.Ed.2d 151 (2008) (citations and internal quotations omitted). To survive a vagueness challenge, a regulation must "clearly set forth the confines within which potential party speakers must act in order to avoid triggering the provision." *McConnell,* 540 U.S. at 170 n. 64. In order to avoid repetition, with regard to the overbroad and vagueness arguments, this Court adopts without amendment, its reasoning in the order granting Plaintiffs' motion for preliminary injunction.

Furthermore, contrary to Defendants' suggestion, the state regulation is not susceptible to a narrowing construction. Nothing in the plain language of the definition of "electioneering communication" (or the way in which Defendants interpreted it before this litigation) even hints that it only applies to the functional equivalent of express advocacy as delineated by *WRTL II*. In fact, the plain language makes clear that it applies to any reference to a candidate or ballot issue that is not express advocacy. Fla. Stat. § 106.011(18)(a) 1 ("Refers to or depicts a clearly identified candidate for office or contains a clear reference indicating that an issue is to be voted on at an election, without expressly advocating the election or defeat of a candidate or the passage or defeat of an issue."). The statute does not lend itself to an easy omission or deletion of the offending language. A narrowing construction of this state statute would result in this Court's entire rewriting of the statute. Writing a statute that is constitutionally sound is a task best suited for the elected legislature, not the judicial branch of government. *Dimmitt v. Clearwater,* 985 F.2d 1565, 1572 (11th Cir.1993) (The task of drafting a constitutionally permissible [regulation] must be left to the [state].). Additionally, forcing potential violators of this law to pursue their legal challenges in a federal court on a case-by-case, as-applied basis is not a model for judicial efficiency, nor is it cost-efficient for potential plaintiffs. Accordingly, it is hereby ORDERED AND ADJUDGED as follows:

*8 1. Plaintiffs' motion for summary judgment (doc. 54) is **granted.**

2. The Clerk shall enter judgment for the Plaintiffs.

3. The following portions of Chapter 106 are unconstitutional on their face and as applied to Plaintiffs and therefore should be stricken from Defendants' regulations:

a. All references to "electioneering communication(s)" in sections 106.011(3), 106.011(4)(a), 106.022(1), 106.04(5), 106.0705(2)(b), 106.071(1), 106.08(7), 106.1437, 106.147(1)(a), and 106.17; and

b. Sections 106.011(1)(b)3, 106.011(4)(b), 106.011(18), 106.011(19), 106.03(1)(b), 106.0703, 106.08(4)(b), 106.08(5)(d), 106.1439, and 106.147(1)(e) in their entirety.

4. Defendants, and their officers, agents, servants, employees, and attorneys, as well as those persons in active concert or participation with them are permanently enjoined from enforcing Florida's electioneering communications laws of Chapter 106, as listed above.

5. This injunction does not affect any other provisions of Chapter 106, including its regulation of political committees and committees of continuous existence, regulations of the expenditures of candidates and other lawful campaign finance regulations.

6. All pending motions are hereby denied as moot.

DONE AND ORDERED.

N.D.Fla.,2009.
Broward Coalition of Condominiums, Homeowners Associations and Community Organizations Inc. v. Browning
Slip Copy, 2009 WL 1457972 (N.D.Fla.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.